**Douglas A. HEUER, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 93–992.**

United States Court of Veterans Appeals.

Decided Feb. 7, 1995.

380

Stephanie Forester, Washington, DC, for appellant.

Sara B. Lake, with whom Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, and Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, Washington, DC, were on the pleadings, for appellee.

Before MANKIN, HOLDAWAY and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, Douglas A. Heuer, appeals, through counsel, a June 16, 1993, Board of Veterans' Appeals (BVA or Board) decision finding that the veteran had not submitted new and material evidence and thus denying the reopening of his claim for service connection for right-ear hearing loss. Record (R.) at 5–6. A timely appeal to this Court followed. The Secretary has filed a motion for summary affirmance. The appellant has filed a motion in lieu of a brief and a response to the Secretary's motion. Because this case presents legal issues of first impression, single-judge summary disposition is not appropriate. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990). The Secretary's motion will be denied, and, for the reasons that follow, the Court will affirm the decision of the Board.

## I. Background

The appellant, Douglas A. Heuer, served on active duty in the U.S. Air Force from January 1963 to January 1967. R. at 10. His entrance medical examination did not report a pure-tone hearing test, but did report "normal" ears with "hearing" test results partially illegible but apparently 15/15 bilaterally. *See* R. at 12–13. The veteran's service medical records (SMRs) indicate that the following pure tone hearing tests were performed while he was in service (the 6000 hz. readings are not included because they are not considered pertinent under Department of Veterans Affairs (VA) regulation 38 C.F.R. § 3.385):

September 1963 (R. at 19):

| Hz. | 500 | 1000 | 2000 | 3000 | 4000 |
|------|------|------|------|------|------|
| db L | − 5 | − 10 | 10 | 15 | 10 |
| db R | − 5 | − 5 | 10 | 25 | 25 |

November 1964 (R. at 20):

| | | | | | |
|------|------|------|------|------|------|
| db L | − 5 | − 10 | 20 | 30 | 15 |
| db R | − 10 | − 10 | 5 | 30 | 30 |

December 1966 separation examination (R. at 29):

| | | | | | |
|------|------|------|------|------|------|
| db L | 0 | 0 | 0 | 35 | 20 |
| db R | 0 | 0 | 10 | 20 | 25 |

382

A medical evaluation accompanying the December 1966 hearing test stated that the veteran's ears were "normal". R. at 28.

In May 1990, the veteran filed with a VA regional office (RO) an application for compensation or pension for "hearing loss—1964 to 1967", stating that he had been treated for hearing loss in January 1967 at Shaw Air Force Base in South Carolina. R. at 43–46. (No medical records from 1967 are contained in the record on appeal (ROA).) In August 1990, finding that the veteran's SMRs from December 1962 to December 1966 and his entrance and separation medical examinations had shown normal hearing for VA purposes, the VARO denied the claim. R. at 49–50. The veteran appealed, and VA issued a Statement of the Case (SOC), stating:

[A] VA examination conducted March 11, 1968, did not include an audiometric examination. The examiner stated ears were externally normal with clear canals and drums. Veteran stated he had not really noted much of a problem with hearing, but the examiner stated that review of [SMRs] showed some high tone losses.

R. at 56. (The March 1968 examination report referred to in the SOC is not contained in the ROA.) In December 1990, the veteran submitted a report of a November 1990 private pure tone audiogram and speech audiometry test (R. at 60–61) and, in response, the RO issued a December 1990 confirmed rating decision finding that hearing loss was not incurred in service and thus denying service connection for hearing loss. R. at 64.

The veteran appealed to the Board of Veterans' Appeals (BVA or Board), and in an August 8, 1991, decision the Board awarded service connection for left-ear hearing loss but denied service connection for right-ear hearing loss. R. at 69. The Board stated:

The reported clinical findings [from SMRs] clearly establish that the veteran's right ear hearing acuity was within normal limits for VA purposes on audiometric examinations in September 1963 and at separation in December 1966. *On audiometric testing in November 1964 his right ear hearing was only abnormal in the reported 40 decibel threshold at 3,000 hertz.* His hearing at this frequency was within

the limits of normal at separation, and therefore the overall pattern of audiometric testing establishes that the veteran's hearing was normal at separation and therefore defective hearing was not incurred in service. Moreover, there is no evidence of record that establishes right ear sensorineural hearing loss within one year following the veteran's separation from active duty. The private audiological evaluation, dated in November 1990, establishes right ear defective hearing; however, this evidence comes over 20 years after the veteran's separation from active service. We have noted the argument advanced on appeal that the claim should be allowed because "accepted medical [principles] would allow for gradual loss after the incipient first evidence of loss". No citation of authority for this theory is advanced....

*The veteran's separation examination does reveal left ear defective hearing at the 3,000 hertz frequency.* Based on the evidence of consistent diminishing left ear hearing acuity during service with a showing of defective hearing at separation from active duty, service connection is established for defective hearing, left ear.

R. at 68–69 (emphasis added).

In September 1991, the veteran underwent a VA hearing test, during which he complained of hearing loss, tinnitus, and vertigo. R. at 72–73. Speech recognition (without an indication of the test used) was 90% in the right ear and 88% in the left ear. R. at 74. The pure tone audiogram indicated:

| Hz. | 1000 | 2000 | 3000 | 4000 |
|---|---|---|---|---|
| db L | 5 | 35 | 60 | 60 |
| db R | 5 | 35 | 60 | 70 |

*Ibid.* The "comments" section of the hearing test report indicated:

[M]ild to mod[erate] ... high freq[uency] [sensorineural] loss at 2000 Hz. and above. Vet can be expected to have communication prob[lems] in many listening situations. He is a candidate for amplif[cation] in either or both ears and [hearing aids] are recommended esp[ecially] for [the] left ear.

R. at 75. In December 1991, the RO determined that the veteran's left-ear hearing loss

was less than 10% disabling and thus non-compensable. R. at 80–81. On December 30, 1991, the veteran filed a Notice of Disagreement (NOD) and submitted an undated private audiogram. R. at 84–85. The RO responded by issuing a December 31, 1991, confirmed rating decision, stating that the "undated audiometric report recently submitted does not show any significant change in the level of hearing loss". R. at 88.

In February 1992, the veteran stated that he wished to reopen his claim for service connection for right-ear hearing loss and submitted to the RO copies of private audiograms dated 1971 and 1979 (R. at 96–97). He stated:

> I believe I had just as much damage to both ears while in the Active Service. I am presenting a new medical and Audiology report I have been able to obtain which show[s] the hearing in 1971 and 1979. The hearing test pattern for the right and left are almost the same and I firmly believe I have had a bilateral problem with this going back to the military and it continues to this date.

R. at 100. In April 1992, the RO, finding that the 1971 and 1979 audiograms, while new, were not material as to the issue of service connection because the earliest one was dated four years after the veteran's active duty had ended, denied reopening of the claim. R. at 104.

In May 1992, the veteran filed an NOD. R. at 106. In his August 1992 Form 1–9 (Appeal to the BVA), the veteran stated that he had been exposed to extremely loud noise in his assignment as a member of a ground crew servicing jet aircraft, and that hearing protection had not always been available. R. at 116. In October 1992, the RO confirmed the previous rating decision. R. at 120. In a November 23, 1992, written presentation to the Board, the veteran's representative stated that both of the veteran's ears should be service connected because both had shown the same pattern of in-service hearing loss followed by continued post-service hearing loss due to in-service noise trauma. R. at 122; *see also* 124–25. In the June 16, 1993, BVA decision here on appeal, the Board determined that the evidence presented by the veteran was new but was not material because the 1971 and 1979 audiograms did not provide the required nexus between right-ear hearing loss and a disease or injury incurred in service, and denied reopening of the claim. R. at 5–6.

## II. Analysis

### A. *Applicable Law*

■ The Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. *See* 38 U.S.C. §§ 5108, 7104(b). On a claim to reopen a previously and finally disallowed claim, the BVA must conduct a "two-step analysis" under section 5108. *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is new and material "when viewed in the context of all the evidence, both new and old", *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991), and presuming "the credibility of the [new] evidence", *Justus v. Principi*, 3 Vet.App. 510, 513 (1992). If the evidence is new and material, the Board must then review it on the merits "in the context of the other evidence of record" to determine whether the prior disposition of the claim should be altered. *Jones (McArthur) v. Derwinski*, 1 Vet.App. 210, 215 (1991).

■ The Court has synthesized the applicable law as follows:

> "New" evidence is that which is not merely cumulative of other evidence of record. "Material" evidence is that which is relevant to and probative of the issue at hand and which, as this Court stated in *Colvin*, *supra* ... must be of sufficient weight or significance (assuming its credibility) that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome.

*Cox (Billy) v. Brown*, 5 Vet.App. 95, 98 (1993). In determining whether evidence is material, relevant statutes and regulations must be examined. *See Chavarria v. Brown*, 5 Vet.App. 468, 471 (1993) (Court examined statutes and regulations to determine if new-

ly submitted evidence created a reasonable possibility that the veteran did not engage in willful misconduct—which would disqualify him for the benefits at issue). A Board determination as to whether evidence is "new and material" is a question of law subject to de novo review by this Court under 38 U.S.C. § 7261(a)(1). *See Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992); *Jones*, 1 Vet.App. at 213; *Colvin, supra.*

 To establish service connection, a veteran of a period of war, as defined in 38 U.S.C. § 101(11), must show either that a disability was manifested or aggravated during service (or during an applicable presumption period thereafter) and exists today, or that a current disability resulted from a disease or injury incurred in service, even if that disease or injury was not manifested during service. *See* 38 U.S.C. §§ 1110, 1112; 38 C.F.R. §§ 3.303(a), 3.307 (1994). Where the determinative issue involves either medical etiology or a medical diagnosis, competent medical evidence is required to fulfill the well-grounded-claim requirement of section 5107(a); where the determinative issue does not require medical expertise, lay testimony may suffice by itself. *See Lathan v. Brown*, 7 Vet.App. 359, 365 (1995) (citing *Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993)); *see also Magana v. Brown*, 7 Vet.App. 224, 227–28 (1994); *Espiritu v. Derwinski*, 2 Vet.App. 492, 494–95 (1992). The threshold of plausibility to make a claim well grounded is considerably lower than the threshold for new and material evidence to justify reopening a claim. *See Lathan*, 7 Vet.App. at 365–66 (citing *Robinette v. Brown*, — Vet.App. —, —, No. 93–985, slip op. at 10–11, 1994 WL 495078 (Sept. 12, 1994), *mot. for recons. granted on other grounds* (Oct. 21, 1994)).

. Specific, further requirements regarding hearing disorders are set forth in 38 C.F.R. § 3.385. At the time of the BVA decision in June 1993, 38 C.F.R. § 3.385 (effective date March 3, 1990) stated in full:

Service connection for impaired hearing *shall not be established* when hearing status meets pure tone and speech recognition criteria. Hearing status shall not be considered service-connected when the thresholds for the frequencies of 500, 1000, 2000, 3000 *and* 4000 Hertz are all less than 40 decibels; the thresholds for at least three of these frequencies are 25 decibels or less; *and* speech recognition scores using the Maryland CNC Test · are 94% or better.

38 C.F.R. § 3.385 (1992) (emphasis added).

In *Hensley v. · Brown*, 5 Vet.App. 155, 159 (1993), this Court interpreted § 3.385 as prescribing the minimum requirements for a hearing loss to be considered a disability for VA purposes, and stated: "Although [§ 3.385] speaks in terms of 'service connection', it operates to establish when a measured hearing loss is (or, more accurately, is *not* ) a 'disability' for which compensation may be paid, provided that the requirements for service connection are otherwise met...." *Hensley* also held that a failure to meet the § 3.385 criteria at separation from service does not necessarily bar service connection for hearing loss, and concluded:

[W]hen audiometric test results at a veteran's separation from service do not meet the regulatory requirements for establishing a "disability" at that time, he or she may nevertheless establish service connection for a current hearing disability by submitting evidence that the current disability is causally related to service.

*Hensley*, 5 Vet.App. at 159–60.

 On November 25, 1994, VA published an amended 38 C.F.R. § 3.385, which had been proposed earlier that year, apparently in response to criticism of § 3.385 in this Court's decision in *Ledford v. Derwinski*, 3 Vet.App. 87, 89 (1992) ("the regulation mixes apples and oranges in that it uses criteria for hearing loss to determine service connection and not degree of disability"). *See* 58 Fed. Reg. 48,483 (1993). The amended § 3.385 provides in full:

For the purposes of applying the laws administered by VA, impaired hearing *will be considered to be a disability* when the auditory threshold in *any* of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, *or* 4000 Hertz are 26 decibels or greater; *or* when

speech recognition scores using the Maryland CNC Test are less than 94 percent. 59 Fed.Reg. 60,560 (1994) (to be codified at 38 C.F.R. § 3.385) (emphasis added). The Court and VA are required to apply a regulation adopted during the pendency of a case when the new regulation is more favorable to a claimant, unless the Secretary has specified to the contrary. *See West v. Brown,* 7 Vet. App. 70, 76 (1994); *Swann v. Brown,* 5 Vet. App. 229, 232 (1993); *Hayes v. Brown,* 5 Vet.App. 60, 66–67 (1993); *Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991). The Secretary·did not so specify as to the amended § 3.385.

The Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Simon v. Derwinski,* 2 Vet. App. 621, 622 (1992); *Masors,* 2 Vet.App. at 188; *Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran. *See Gabrielson v. Brown,* 7 Vet.App. 36, 39–40 (1994); *Abernathy v. Principi,* 3 Vet.App. 461, 465 (1992); *Simon, supra; Peyton v. Derwinski,* 1 Vet.App. 282, 285 (1991); *Hatlestad v. Derwinski,* 1 Vet. App. 164, 169 (1991); *Gilbert, supra.*

### B. Application of Law to Facts

*1. Amended 38 C.F.R. § 3.385:* As noted above, in order to decide whether the Court is required to apply the amended 38 C.F.R. § 3.385, adopted in November 1994 during the pendency of this appeal, to the veteran's pending appeal for the purpose of determining whether there was new and material evidence to reopen the veteran's right-ear hearing-loss claim, it is necessary to examine whether the amended § 3.385 would be "more favorable" to the veteran in reopening his claim to establish service connection for

right-ear hearing loss. The evidence submitted to the RO by the veteran following the 1991 BVA decision consisted of copies of the private 1971 and 1979 audiograms. Those audiograms are new evidence in that they were not previously considered by the RO or the BVA. (So is the amended regulation, *see Akins v. Derwinski,* 1 Vet.App. 228, 230 (1991).) The question then becomes whether those audiograms are material; that is, whether they are relevant to or probative of the issue at hand—service connection for the veteran's right-ear hearing loss—and present a reasonable possibility that, when viewed in the context of all the evidence, both new and old, they would change the outcome of the BVA's 1991 adverse decision on the right-ear hearing-loss claim. *See Cox, supra.*

At first blush, it might appear that the amended § 3.385 effected substantive change because the defined term was switched from what is *not* service connected to what *is* a disability and the criteria were switched from being stated in the conjunctive to being stated in the disjunctive. However, the Court holds that no substantive change was made. As the Court explained in *Ledford:* "It is important to note that § 3.385 is negative in its terms and in its application. The regulation states when service connection will *not* be established; it does not, however, determine when service connection will be established." *Ledford,* 3 Vet.App. at 89. In defining a negative—the circumstances under which service connection may not be established—the criteria listed were properly expressed in the conjunctive (connected by "and") because in order for service connection to be excluded all of the criteria as to hearing acuity less than certain levels had to be present. The effect was that if *any one* of the criteria were satisfied, then service connection was allowable. The revised § 3.385 made this construction plain on its face by defining what would be considered a disability—not what would *not*—in terms of the existence of a hearing acuity level above *any* one of the threshold criteria.

Hence, VA has essentially codified this Court's interpretation of the original § 3.385 set forth in *Hensley* and *Ledford,* both *supra,* and made no substantive change in the

**386**

effect of the regulation. Moreover, an examination of the supplementary information provided on September 16, 1993, with the proposed amendment confirms this conclusion:

> In a recent decision [*Ledford, supra*] the U.S. Court of Veterans Appeals noted that 38 [C.F.R. § ] 3.385 is negative in both tone and application in that it states when service connection will not be established without determining when service connection will be established. The court also noted that the regulation "mixes apples and oranges" by using criteria for hearing loss to determine service connection rather than degree of disability.

> We propose to correct these shortcomings by amending 38 [C.F.R. § ] 3.385 to establish a standard for determining whether, for VA purposes, a disability due to impaired hearing exists. If such a disability does exist, whether or not it is service-connected is a separate determination governed by the provisions of 38 [C.F.R. §§ ] 3.303–3.344. Although we are proposing to restate the pure tone and speech recognition criteria for the sake of clarity, *this constitutes no substantive change to the criteria contained in the current regulation.* These changes will clearly limit the regulation to a definition of disability due to impaired hearing, and no longer suggest that the rule governs service connection once a disability has been established.

58 Fed.Reg. 48,483–84 (1993) (emphasis added). The supplementary information states expressly that the amended § 3.385 was not intended to change the minimum criteria for hearing loss for VA purposes; rather, the intent was to clarify that what was being defined was when VA would recognize hearing loss as a disability and that the establishment of service connection for hearing loss is controlled by the statutes and regulations regarding establishment of service connection in general. In light of the above, the Court holds that the application of the amended regulation would not be "more favorable" to the veteran, and thus the original § 3.385 is applicable to this appeal at this point.

■ *2. Service connection for right-ear hearing loss:* The 1971 and 1979 hearing tests would be material for purposes of reopening the veteran's claim if they presented a reasonable possibility under the original § 3.385 of providing a nexus between the veteran's service and his current right-ear hearing disability. The BVA originally denied the veteran's claim for right-ear hearing loss because the veteran did not present evidence linking the loss to a disease or injury sustained in service or within any applicable presumption period. R. at 68–69. The newly submitted 1971 and 1979 audiograms were not accompanied by any medical evidence indicating a nexus to service. However, the veteran argues that the fact that his left-ear hearing loss has been service connected should be considered evidence for service connection of the right ear on the ground that noise trauma could not affect just one ear. Appellant's Motion (Mot.) for Summary Vacation and Remand at 9–10.

The Court rejects this contention. First, the Court notes that the reasons stated by the Board for granting service connection for the left ear were not reflected in the evidence then of record. The 1991 Board decision stated: "The veteran's separation examination does reveal left ear defective hearing at the 3,000 hertz frequency." R. at 69. However, the veteran's December 1966 discharge examination (R. at 29) recorded an audiogram result of only 35 decibel loss in the left ear at 3,000 hertz, which does not meet the requirement of 38 C.F.R. § 3.385 for a decibel loss of 40 or more. In fact, none of the veteran's in-service hearing tests showed a decibel loss of 40 or more at any frequency, and none showed thresholds exceeding 25 decibels for three or more of the listed frequencies (the second alternative requirement for disability under § 3.385) or speech discrimination below 94% (the third alternative requirement for disability under § 3.385). The Court also notes that the 1991 Board decision stated: "On audiometric testing in November 1964 his right ear hearing was only abnormal in the reported 40 decibel threshold at 3,000 hertz." R. at 68. In fact, according to that record, the decibel loss at 3,000 hertz in the 1964 audiogram was 30, not 40. R. at 20.

Additionally, the veteran has not cited any medical authority for his argument that hearing loss due to noise trauma in one ear is likely to be accompanied by hearing loss due to noise trauma in the other ear. Nor has the veteran presented any medical evidence that the worsening of his hearing following service was due to acoustic trauma suffered while in service. *See Moray v. Brown,* 5 Vet.App. 211, 214 (1993) (lay assertions of medical causation cannot suffice to reopen a claim under 38 U.S.C. § 5108); *see also Lathan, supra.*

■ Next, the veteran, citing 38 C.F.R. § 3.303(b) and *Jones,* 1 Vet.App. at 216, argues that he does not need a medical opinion establishing a nexus between current hearing loss and service, because a nexus is provided by evidence of continuity of symptomatology. Appellant's Opposition to Appellee's Mot. for Summary Affirmance at 4–6. The appellant, citing *Hensley, supra,* argues that SMRs show right-ear hearing loss in service (although not to an extent to be a disability under § 3.385), and that the 1971 and 1979 audiograms showing hearing loss provide a link to the 1990 and 1991 examinations showing current hearing loss. Mot. at 1–3. First, the Court notes that the 1971 audiogram was performed four years after the veteran's 1967 separation from service, thus creating a gap of at least four years in any continuity of symptomatology under § 3.303(b). Second, under § 3.303(b), continuity of symptomatology can aid in establishing service connection only in cases where the "condition [was] noted during service (or in the presumptive period)"; and *Jones* (where the appellant did present medical evidence of a nexus to service) states merely that continuity of symptoms does not require that the in-service and post-service diagnoses use exactly the same terminology. *See* 38 C.F.R. § 3.303(b) (1994); *Jones, supra.* The appellant's argument would require the Court to find that evidence of hearing loss which does not meet the criteria of 38 C.F.R. § 3.385 for establishing a disability is nevertheless sufficient for purposes of showing continuity of symptomatology. However, the appellant has not cited any authority for that proposition in any statute, regulation, or caselaw; such a proposition is within the realm of VA policy makers or the Congress and is not for this Court to adopt. *See* 38 U.S.C. § 7261; *Horner v. Jeffrey,* 823 F.2d 1521, 1527 (Fed.Cir.1987) ("[t]he task of rewriting a statute is and should remain a duty reserved for Congress") (citing *Marchetti v. United States,* 390 U.S. 39, 60 n. 18, 88 S.Ct. 697, 708 n. 18, 19 L.Ed.2d 889 (1968)).

■ Because there is no medical evidence of any nexus between current right-ear hearing loss and any disease or injury incurred during service, the Court holds that it is not "reasonably possible" that any evidence contained in the 1971 and 1979 hearing-test reports of post-service right-ear hearing loss or of similarity between right-ear and left-ear hearing loss would change the outcome as to service connection for right-ear hearing loss. The Court notes that the Board's statement of reasons or bases for its June 16, 1993, decision did not address the veteran's contention (made substantially in his February 1992 claim to reopen (R. at 100) and his representative's November 23, 1992, written presentation to the Board (R. at 122)) that the similarity between the hearing loss in his right ear and the service-connected hearing loss in his left ear was evidence of in-service acoustic trauma to the right ear. However, Court review on the issue of new and material evidence to reopen a claim is de novo, and in this case any deficiency in the Board's statement of reasons or bases does not preclude effective judicial review, *see Simon, Masors,* and *Gilbert,* all *supra,* and thus would not be prejudicial error. *See* 38 U.S.C. § 7261(b) ("[i]n making the determinations under subsection (a) of this section, the Court shall take due account of the rule of prejudicial error"); *Yabut v. Brown,* 6 Vet.App. 79, 83 (1993); *Godwin v. Derwinski,* 1 Vet.App. 419, 427 (1991). The Court will affirm the June 16, 1993, Board decision because the Court holds as a matter of law that there was no new and material evidence to reopen the appellant's claim for service connection for right-ear hearing loss.

## III. Conclusion

Upon consideration of the record and the pleadings of the parties, the Court denies the

Secretary's motion for summary affirmance, and holds that the appellant has not demonstrated that the BVA committed error in denying reopening of his claim for service connection for right-ear hearing loss, and thus affirms the Board's June 16, 1993, decision.

AFFIRMED.