Citation Nr: 1237395 
Decision Date: 10/31/12 Archive Date: 11/09/12

DOCKET NO. 10-08 686 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio


THE ISSUES

1. Entitlement to a rating in excess of 20 percent for a lateral capsular tear of the left knee with traumatic arthritis.

2. Entitlement to a rating in excess of 10 percent for arthritis of the right knee.


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

S. Layton, Counsel



INTRODUCTION

The Veteran served on active duty from January 1988 to January 1992.

This case comes before the Board of Veterans' Appeals (Board) on appeal from a May 2007 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Cleveland, Ohio. The Statement of the Case was issued by the Detroit RO.

In connection with his appeal the Veteran testified at a hearing before the undersigned Veterans Law Judge at the Cleveland RO in November 2010. A transcript of the hearing is associated with the claims file. 

When this case was previously before the Board, it was remanded for further development. While the case was in remand status, the Veteran's appeal for service connection for right knee disability was resolved by a February 2012 rating decision granting service connection for arthritis of the right knee. In April 2012, the Veteran disagreed with the rating assigned his right knee disability.

The issue of entitlement to a rating in excess of 10 percent for arthritis of the right knee is addressed in the REMAND that follows the ORDER section of this decision.


FINDING OF FACT

Throughout the entire period of the claim, the Veteran's left knee disability has been manifested by frequent episodes of locking, pain and effusion into the joint; extension has been full, flexion has not been limited to less than 30 degrees; and no lateral instability or recurrent subluxation has been present.




CONCLUSION OF LAW

The criteria for a disability rating in excess of 20 percent for a left knee disability have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 4.7, 4.10, 4.14, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5003, 5257, 5260, 5261 (2011).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A (West 2002 & Supp. 2011), and the pertinent implementing regulation, codified at 38 C.F.R. § 3.159 (2011), provide that VA will assist a claimant in obtaining evidence necessary to substantiate a claim but is not required to provide assistance to a claimant if there is no reasonable possibility that such assistance would aid in substantiating the claim. 

They also require VA to notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of the notice, VA is to specifically inform the claimant and the claimant's representative, if any, of which portion, if any, of the evidence is to be provided by the claimant and which part, if any, VA will attempt to obtain on behalf of the claimant. 

The Board also notes the United States Court of Appeals for Veterans Claims (Court) has held that the plain language of 38 U.S.C.A. § 5103(a) (West 2002), requires that notice to a claimant pursuant to the VCAA be provided 'at the time' that or 'immediately after' VA receives a complete or substantially complete application for VA-administered benefits. Pelegrini v. Principi, 18 Vet. App. 112, 119 (2004). The timing requirement enunciated in Pelegrini applies equally to the initial-disability-rating and effective-date elements of a service-connection claim. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

The Veteran was provided adequate VCAA notice for his claim in a November 2006 letter, prior to the May 2007 rating decision on appeal.

The Board also finds the Veteran has been afforded adequate assistance in regard to the claim. Service treatment records and pertinent post-service medical records have been obtained, and the Veteran has been afforded an appropriate VA examination. Neither the Veteran nor his representative has identified any other evidence that could be obtained to substantiate the claim; the Board is also unaware of any such evidence. Therefore, the Board is satisfied that VA has complied with its duty to assist the Veteran in the development of the facts pertinent to this claim.

Previously, the Board remanded the claim to afford the Veteran another VA examination. The requested VA examination was performed in April 2012. The examiner followed the VA Disability Benefits Questionnaire for Knee and Lower Leg Conditions. The Board finds that there has been substantial compliance with the requirements articulated in the Board's prior remand. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

Accordingly, the Board will address the merits of the claim.

Legal Criteria

General

Disability evaluations are determined by the application of the VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4 (2011). The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1 (2011). 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

It is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified; findings sufficiently characteristic to identify the disease and the disability therefrom are sufficient; and above all, a coordination of rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21 (2011). 

Degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic code(s) for the specific joint(s) involved. When limitation of motion of the specific joint involved is noncompensable under the appropriate diagnostic code, a 10 percent rating will be assigned for each major joint or group of minor joints affected by limitation of motion. 38 C.F.R. § 4.71a, Diagnostic Code 5003.

In determining the degree of limitation of motion, the provisions of 38 C.F.R. §§4.10, 4.40 and 4.45 are for consideration. See DeLuca v. Brown, 8 Vet. App. 202 (1995).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. Functional loss may be due to the absence or deformity of structures or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40.

With respect to joints in particular, the factors of disability reside in reductions of normal excursion of movements in different planes. Inquiry will be directed to more of less than normal movement, weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity or atrophy of disuse. 38 C.F.R. § 4.45.

The intent of the Rating Schedule is to recognize actually painful, unstable or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. 

Knee impairment with recurrent subluxation or lateral instability warrants a 10 percent evaluation if it is slight; a 20 percent evaluation if it is moderate; or a 30 percent evaluation if it is severe. 38 C.F.R. § 4.71a, Diagnostic Code 5257.

Limitation of flexion of the knee warrants a noncompensable rating if flexion is limited to 60 degrees; a 10 percent rating if flexion is limited to 45 degrees; and a 20 percent rating is flexion is limited to 30 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5260.

Limitation of extension of the knee warrants a noncompensable rating if extension is limited to five degrees; a 10 percent rating is extension is limited to 10 degrees; and a 20 percent rating is flexion is limited to 15 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5261.

Dislocated semilunar cartilage with frequent episodes of "locking," pain, and effusion into the joint warrants a 20 percent evaluation. 38 C.F.R. § 4.71a, Diagnostic Code 5258.

The removal of semilunar cartilage warrants a 10 percent rating if it is symptomatic. 38 C.F.R. § 4.71a, Diagnostic Code 5259.

In every instance where the schedule does not provide a noncompensable evaluation for a diagnostic code, a noncompensable evaluation will be assigned when the requirements for a compensable evaluation are not met. 38 C.F.R. § 4.31.

The evaluation of the same disability under various diagnoses is to be avoided. 38 C.F.R. § 4.14. 38 C.F.R. § 4.14 does not preclude the assignment of separate evaluations for separate and distinct symptomatology where none of the symptomatology justifying an evaluation under one diagnostic code is duplicative of or overlapping with the symptomatology justifying an evaluation under another diagnostic code. Esteban v. Brown, 6 Vet. App. 259, 262 (1994). 

The VA General Counsel has held that a claimant who has arthritis and instability of a knee may be rated separately under Diagnostic Codes 5003 and 5257, while cautioning that any such separate rating must be based on additional disabling symptomatology. VAOPGCPREC 23-97, 62 Fed. Reg. 63,604 (July 1, 1997); VAOPGCPREC 9-98, 63 Fed. Reg. 56,704 (August 14, 1998).

The VA General Counsel also has held that separate ratings under 38 C.F.R. § 4.71a, Diagnostic Code 5260 (limitation of flexion of the leg) and Diagnostic Code 5261 (limitation of extension of the leg) may be assigned for disability of the same joint. VAOGCPREC 9-2004 (September 17, 2004).

Burden of Proof

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary. The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107 (West 2002); 38 C.F.R. § 3.102 (2011); see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54. 

Evidentiary Background

In accordance with 38 C.F.R. §§ 4.1, 4.2, 4.4, 4.42 (2011) and Schafrath v. Derwinski, 1 Vet. App. 589 (1991), the Board has reviewed all evidence of record pertaining to the history of the service-connected disability. The Board has found nothing in the historical record which would lead to the conclusion that the current evidence of record is not adequate for rating purposes. Moreover, the Board is of the opinion that this case presents no evidentiary considerations which would warrant an exposition of remote clinical histories and findings pertaining to the disability.

Private treatment records from August and September 2006 contain the Veteran's report of left knee pain. A private treatment record from October 2006 reflects that flexion of the left knee was to 120 degrees with slight pain on hyperflexion. Extension was to 0 degrees. Tenderness was noted along the lateral joint line. The examiner found no ligament pathologic laxity. An X-ray study demonstrated tri-compartmental osteoarthritis with bone-to-bone apposition but no opaque loose bodies.

On VA compensation and pension examination in May 2007, the Veteran reported experiencing soreness, aching, pain, stiffness and swelling, occasional locking, and occasional give-way in his left knee. The examiner noted that the Veteran wore a brace on his left knee and was able to perform his normal job and daily activities. Left knee motion was from 0 degrees to 115 degrees of flexion. Pain was observed throughout the range of motion and worsened within the last 20 to 30 degrees of flexion. Flare-ups occurred with repetitive use. The left knee was deemed to be stable to mediolateral and anteroposterior testing. The diagnosis given was postoperative capsular tear of the left knee with arthritis.

Private treatment records from May, June, and September 2007 reflect that the Veteran's extremities had a normal range of motion.

A VA orthopedic consult from July 2008 indicates that the Veteran experienced left knee pain. The Veteran reported that his knee prevented him from playing basketball and bicycling. When the examiner asked about his knee catching or locking, the Veteran said that did not happen. The examiner observed lateral joint line tenderness. The left lower extremity was stable to varus and valgus. The examiner noted that the range of motion included complete extension and flexion to greater than 120 degrees. An X-ray study revealed severe lateral compartment osteoarthritis. The examiner administered a steroid injection.

During his November 2010 Board hearing, the Veteran stated that his left knee would start to lock two to three times a day. He said when he did not wear his knee brace his knee would give way. He experienced pain on a daily basis. He said that he was unable to be as physically active as he once was. He received steroid shots about every six months. 

On VA compensation and pension examination in June 2011, the Veteran reported experiencing pain, stiffness, soreness, swelling, fatigability, and giving way. It was noted that the Veteran had worn a knee brace. He was unable to do any heavy standing, climbing, squatting, or crawling work. He was employed at a sedentary job. The left knee range of motion was noted to be from 0 degrees to 120 degrees of flexion with pain. Repetitive use caused more pain, and flare-ups occurred with heavy use. The examiner remarked that the left knee was stable.

On VA examination in November 2011, the Veteran reported experiencing ongoing left knee pain. Left knee flexion was to 110 degrees with pain beginning at 60 degrees. Extension was to 0 degrees with pain at 0 degrees. The Veteran was able to perform repetitive motions with fatigability, decreased movement, pain, and interference with weight-bearing. Instability testing yielded normal results. The examiner found no evidence of recurrent patellar subluxation or dislocation. It was noted that the Veteran had a history of a meniscal tear that was corrected through surgery in 1988. It was noted that the Veteran regularly used a brace. The examiner concluded that the Veteran was limited to sedentary work.

On VA examination in April 2012, the Veteran indicated that he experienced flare-ups of pain in his left knee. Left knee flexion was to 115 degrees with pain at 60 degrees. Extension was to 0 degrees with pain at 0 degrees. The Veteran was able to perform repetitive motions with fatigability, decreased movement, pain, and interference with weight-bearing. Instability testing yielded normal results. The examiner found no evidence of recurrent patellar subluxation or dislocation. The examiner indicated that the Veteran had frequent episodes of joint "locking", pain, and effusion. It was noted that the Veteran used a knee brace. The examiner indicated that the Veteran could not perform heavy work, but he could do sedentary work.

Upon careful review of the evidence of record, the Board finds that the Veteran is not entitled to a rating in excess of 20 percent for his service-connected left knee disability or a separate compensable rating for the disability. The April 20112 VA examiner determined that the Veteran experiences frequent episodes of "locking", pain, and effusion, which support the assignment of a 20 percent rating under Diagnostic Code 5258, the maximum rating available under that Diagnostic Code.

A separate 10 percent rating is not warranted under Diagnostic Code 5259 because the impairment contemplated by Diagnostic Code 5259 is not separate and distinct from that contemplated by Diagnostic Code 5258.

Separate ratings under Diagnostic Code 5258 and the Diagnostic Codes for rating limitation of motion are also prohibited because the pain contemplated by Diagnostic Code 5258 is also contemplated by Diagnostic Codes 5260 and 5261. However, the Board has considered whether it would be to the Veteran's advantage to rate the disability on the basis of limitation of motion rather than under Diagnostic Code 5258. All of the range of motion testing has shown that the Veteran has no limitation of extension. Therefore, a compensable rating would not be warranted under Diagnostic Code 5261. For a rating in excess of 20 percent to be warranted on the basis of limitation of flexion, the evidence would have to demonstrate limitation of flexion that more nearly approximates limitation to 15 degrees than limitation to 30 degrees. In this case, the evidence shows that flexion has never been limited to less than 60 degrees even with consideration of all pertinent disability factors.

With respect to whether a separate rating is warranted under Diagnostic Code 5257, the Board acknowledges that the Veteran is competent to report that he experiences left knee instability, but the Board has determined that the objective medical findings are more probative than the Veteran's self serving statements. The medical evidence has consistently shown that no lateral instability or recurrent subluxation has been present.

The Board additionally notes that there are no medical records showing any findings of ankylosis of the left knee joint, and VA examinations show that ankylosis of the joint is not present 

The Board notes that VA must consider all favorable lay evidence of record. 38 USCA § 5107(b); Caluza v. Brown, 7 Vet. App. 498 (1995). Accordingly, the Board has carefully considered the Veteran's correspondence to VA, hearing testimony, and treatment records in which he alleges his left knee symptoms warrant a rating in excess of 20 percent. 

A layperson is competent to testify in regard to the onset and continuity of symptomatology. Heuer v. Brown, 7 Vet. App. 379, 384 (1995); Falzone v. Brown, 8 Vet. App. 398, 403 (1995); Caldwell v. Derwinski, 1 Vet. App. 466 (1991). The Board has accepted the Veteran's account as competent. However, the objective medical evidence uniformly shows that the Veteran's left knee is not ankylosed and the range of motion findings are as listed above, with consideration of pain. Again, the Board must find the objective medical findings to be more probative than the Veteran's self-serving statements. 

There is no basis for the assignment of any higher rating based on consideration of any of the factors addressed in 38 C.F.R. §§ 4.40, 4.45 and DeLuca, 8 Vet. App. at 204-7.

Additional Considerations

Consideration has been given to assigning staged ratings for his left knee disability; however, at no time during the period in question has the disability warranted more than the rating discussed above. See Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App. 119 (1999). 

The Board has considered whether this case, or any component thereof, should be referred to the Director of the Compensation and Pension Service for extra-schedular consideration. In determining whether a case should be referred for extra-schedular consideration, the Board must compare the level of severity and the symptomatology of the claimant's disability with the established criteria provided in the rating schedule for disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned evaluation is therefore adequate, and no referral for extra-schedular consideration is required. Thun v. Peake, 22 Vet. App. 111, 115 (2008). 

In this case the manifestations of the service-connected disability are contemplated by the schedular criteria. Medical records do not reflect symptoms that are not contemplated by the schedular criteria. Moreover, significant medical records from VA show that the Veteran was found to be able to perform sedentary work, and the Veteran is currently employed. The Board has therefore determined that referral of this case for extra-schedular consideration under 38 C.F.R. § 3.321(b) is not in order.


ORDER

A disability rating in excess of 20 percent for a left knee disability is denied.


REMAND

As noted above, in a February 2012 rating decision, the Veteran was granted service connection for arthritis of the right knee. In April 2012, the Veteran disagreed with the rating assigned his right knee disability.

As the Veteran has not been provided a statement of the case in response to the April 2012 notice of disagreement, a remand is required for the issuance of a statement of the case on this issue. See Manlicon v. West, 12 Vet. App. 238 (1999).

Accordingly, this case is REMANDED to the RO or the Appeals Management Center (AMC), in Washington, D.C., for the following actions:

1. The RO or the AMC should issue a statement of the case to the appellant and his representative on the issue of entitlement to a rating in excess of 10 percent for arthritis of the right knee. He should also be informed of the requirements to perfect an appeal with respect to this issue. 

2. If the Veteran perfects an appeal with respect to this matter, the RO or the AMC should ensure that any indicated development is completed before the case is returned to the Board.

By this remand, the Board intimates no opinion as to any final outcome of this case. The Veteran need take no action until he is otherwise notified but he has the right to submit additional evidence and argument on the matter the Board has remanded. See Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).



______________________________________________
Shane A. Durkin
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs