Citation Nr: AXXXXXXXX
Decision Date: 08/31/21 Archive Date: 08/31/21

DOCKET NO. 200716-97946
DATE: August 31, 2021

ORDER

Entitlement to service connection for bilateral hearing loss is granted. 

Entitlement to a 20 percent initial evaluation, but no higher, for service-connected erectile dysfunction associated with prostate cancer, status post radical prostatectomy (hereinafter, service-connected erectile dysfunction), is granted, subject to the applicable regulations concerning the payment of monetary benefits. 

REMANDED

Entitlement to a compensable initial evaluation for service-connected adenocarcinoma of the middle lobe of the right lung (hereinafter, service-connected residuals of lung cancer), is remanded. 

Entitlement to a compensable initial evaluation for service-connected prostate cancer, status post radical prostatectomy (hereinafter, service-connected residuals of prostate cancer), is remanded. 

FINDINGS OF FACT

1. The most probative evidence is at least in relative equipoise concerning whether the Veteran's bilateral hearing loss is the result of his conceded in-service exposure to acoustic trauma.

2. The most probative evidence reflects that the Veteran's service-connected erectile dysfunction has been manifested by loss of erectile power and deformity of the penis, diagnosed as Peyronie's disease. 

CONCLUSIONS OF LAW

1. The criteria for service connection for bilateral hearing loss are met. 38 U.S.C. §§ 1110, 1131, 5103, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303. 

2. The criteria for a 20 percent initial evaluation for service-connected erectile function are met throughout the entirety of the appeal period. 38 U.S.C. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.10, 4.115b, Diagnostic Code 7522.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Army from March 1966 to March 1968, to include in the Republic of Vietnam. He also had subsequent service of an unverified nature in the Army Reserve.

In August 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act of 2017 (Appeals Modernization Act or AMA), Pub. Law 115-55, which created a new claims and appeals process for pursuing VA benefits.

The Veteran's appeal stems from a November 2019 rating decision by a Department of Veteran's Affairs (VA) Regional Office (RO) of the Veteran's Benefits Administration (VBA), which is the Agency of Original Jurisdiction (AOJ). In July 2020, the Veteran submitted a VA Form 10182 reflecting his request to appeal the AOJ's determinations via the Board's hearing docket. In April 2021, the Veteran participated in the requested Board hearing, and the transcript of such is associated with the file. The Board may consider all evidence received by VA within 90 days after completion of the April hearing.

1. Entitlement to service connection for bilateral hearing loss 

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303. If a condition noted during service is not shown to be chronic, then generally a showing of continuity of symptomatology after service is required for service connection. 38 C.F.R. § 3.303(b), Walker v. Shinseki 708 F.3d 1331. (Fed. Cir. 2013). Service connection may also be granted for any disease diagnosed after discharge from service when all of the evidence, including lay evidence, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

In order to establish service connection for a claimed disability, the following three elements must be satisfied: (1) the existence of a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship (nexus) between the present disability and the disease or injury incurred or aggravated during service. Hickson v. West, 12 Vet. App. 246 (1999).

In evaluating the evidence in an appeal, it is the responsibility of the Board to weigh the evidence and decide where to give credit and where to withhold same and, in doing so, accept certain medical opinions over others. Schoolman v. West, 12 Vet. App. 307 (1999). In this regard, the Board has been charged with the duty to assess the credibility and weight given to the evidence. Jandreau v. Nicholson, 492 F.3d 1372 (2007). Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of the matter, VA shall give the benefit of the doubt to the Veteran. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Lay statements may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the present of disability or symptoms of disability subject to lay observation. 38 U.S.C. § 1153 (a); 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Although lay persons are considered competent to provide opinions on some medical issues, some medical issues fall outside of the realm of common knowledge of a lay person. Kahana v. Shinseki, 24 Vet. App. 428 (2011). 

Specific to claims for service connection for hearing loss, impaired hearing is considered a disability for VA purposes when the auditory threshold in any of the frequencies of 500, 1000, 2000, 3000 or 4000 Hertz is 40 decibels or greater; the threshold for at least three of these frequencies are 26 or greater; or when speech recognition scores using the Maryland CNC test are less than 94 percent. 38 C.F.R. § 3.385 (2016). 

When there is no diagnosis of hearing loss in service, the absence of documented hearing loss in service is not fatal to a service connection claim for such disability, especially if service records indicate a significant in-service threshold shift. Ledford v. Derwinski, 3 Vet. App. 87 (1992); Hensley v. Brown, 5 Vet. App. 155 (1993). Establishing service connection is possible if the current hearing loss can be adequately linked to service. Ledford, 3 Vet. App.at 89. Thus, a claimant who seeks to establish service connection for a current hearing disability must show, as is required in a claim for service connection for any disability, that the current disability is the result of an injury or disease incurred in service; the determination of which depends on a review of all of the evidence of record. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. §§ 3.303, 3.304. 

Additionally, other organic diseases of the nervous system, such as sensorineural hearing loss, are classified as "chronic diseases" under 38 C.F.R. § 3.309(a); therefore, 38 C.F.R. § 3.303(b) also applies. 38 C.F.R. § 3.307; Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Presumptive service connection for "chronic diseases" must be considered on three bases: chronicity during service, continuity of symptomatology since service, and manifestations within one year of the veteran's separation from service. Walker, 708 F.3d at 1338. 

Analysis

The Veteran asserts that his current bilateral hearing loss disability was incurred during his active duty, secondary to in-service exposure to excessive noise from jet engines, rocket fire, and overhead explosions while stationed in the Republic of Vietnam. 

Upon his audiometric testing in September 2019, the Veteran demonstrated decibel losses which meet the criteria for a diagnosis of bilateral hearing loss for VA purposes under 38 C.F.R. § 3.385. Based on these test results, the September 2019 VA examiner provided a diagnosis of bilateral sensorineural hearing loss, and the VA disability, and the examiner provided a diagnosis of bilateral sensorineural hearing loss, and thus, element (1) is demonstrated.

Concerning element (2), evidence of an in-service injury, the Veteran's service treatment records do not show audiometric testing results meeting the criteria for a bilateral hearing loss disability during active duty or Reserve service. However, at the April 2021 hearing, the Veteran competently and credibly reported experiencing in-service exposure to excessive noise from jet engines, rocket fire, and overhead explosions while stationed in the Republic of Vietnam that his active duty included being stationed at Tan Son Nhut Air Base in the Republic of Vietnam. The Veteran's service department records verify the Veteran's duty station during the Vietnam War, and thus, the Board concedes his in-service exposure to excessive noise. To this extent, element (2) has been amply demonstrated. 

Concerning element (3), the September 2019 VA examiner opined that the Veteran's bilateral hearing loss was less likely as not the result of his in-service noise exposure. As rationale, the VA examiner cited that the Veteran had "normal" hearing at entrance to and separation from active duty, and his Military Occupational Specialty (MOS) as an Internist carried a "low probability for hazardous noise exposure." While the Board acknowledges this opinion, the stated rationale does not contemplate the Veteran's competent and credible reports of in-service noise exposure while stationed in the Republic of Vietnam and is contrary to the United States Court of Appeals for Veteran's Claims' (the Court's) holding in Ledford. As such, the September 2019 VA opinion is afforded no probative weight concerning this matter. 

Contrary to the conclusions of the September 2019 VA examiner, the Veteran, who is a physician, opined at the April 2021 Board hearing that his bilateral hearing loss disability was at least as likely as not due to his in-service noise exposure. In support of this medical opinion, the Veteran cited to his diminished hearing acuity since his in-service noise exposure. Heuer v. Brown, 7 Vet. App. 379 (1995). While not disparaging the medical training of the September 2019 VA examiner, the Board acknowledges that the Veteran is a medical doctor, and by virtue of his training, the Board finds that his competent assertions regarding this matter are also considered to be credible. Further, the Board finds that the Veteran's stated rational is congruent with the totality of the evidence of record and the applicable laws pertinent to establishing service connection. 

In light of above, the Board concludes that the Veteran's stated medical opinion concerning the etiology of his bilateral hearing loss is highly probative of the matter forming the crux of his appealed issue. . Bloom v. West, 12 Vet. App. 185, 187 (1999). As such, the nexus element to establish service connection is demonstrated. 

Accordingly, the Board finds that the evidence is at least in equipoise regarding whether the Veteran's current bilateral hearing loss was incurred in service. Accordingly, and affording the Veteran the benefit of the doubt, the Board finds that service connection for bilateral hearing loss is warranted. 38 U.S.C. § 1110, 1131, 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

2. Entitlement to a compensable initial evaluation for service-connected erectile dysfunction 

Disability evaluations are determined by the application of a schedule of ratings, which is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. See 38 U.S.C. § 1155; 38 C.F.R. Part 4. The percentage ratings in VA's Schedule for Rating Disabilities (Rating Schedule) represent as far as can practicably be determined the average impairment in earning capacity resulting from such disabilities and their residual conditions in civil occupations. See 38 C.F.R. § 4.1.

Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability more closely approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107 (b); 38 C.F.R. §§ 3.102, 4.3. 

Where entitlement to compensation has already been established and increase in disability is at issue, the present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55 (1994). However, "staged" ratings are appropriate where the factual findings show distinct time periods when the service-connected disability exhibits symptoms that would warrant different ratings. See Hart, supra. Separate compensable evaluations may be assigned for separate periods of time if such distinct periods are shown by the competent evidence of record during the appeal, a practice known as "staged" ratings. See Fenderson v. West, 12 Vet. App. 119, 126 (1999).

Analysis

The Veteran contends a 20 percent initial evaluation is warranted for his service-connected erectile dysfunction because the disability is manifested by loss of erectile power and Peyronie's disease. For the reasons discussed below, the Board concludes that the most probative evidence bolsters his assertion.

In the November 2019 rating decision, the AOJ established service connection for erectile dysfunction secondary to the Veteran's service-connected residuals of prostate cancer; a noncompensable initial evaluation was assigned for this service-connected disability for this disability from April 23, 2019, under 38 C.F.R. § 4.31, Diagnostic Code 7522. Downstream from this allowance, the AOJ awarded special monthly compensation based on loss of use of a creative organ was granted under 38 U.S.C. § 1114(k); 38 C.F.R. § 3.350(a), effective from the same date.

The AOJ's use of Diagnostic Code 7522, evaluation of "penis, deformity, with loss of erectile power," to rate the Veteran's erectile dysfunction indicates that this specific disability is not addressed in the rating schedule, and that the service-connected erectile dysfunction has thusly been rated by analogy to penis deformity with loss of erectile power. 38 C.F.R. §§ 4.20, 4.115b, Diagnostic Code 7522. The Board cannot identify a more appropriate diagnostic code than Diagnostic Code 7522, nor has the Veteran identified one. Butts v. Brown, 5 Vet. App. 532, 538 (1993). Diagnostic Code 7522 provides for a single 20 percent rating for deformity of the penis with loss of erectile power. 38 C.F.R. § 4.115b, Diagnostic Code 7522. 

The AOJ's assigned a noncompensable initial evaluation for this disability in the November 2019 rating decision based on 38 C.F.R. § 4.31, which provides that, in every instance where the schedule does not provide a zero percent rating for a diagnostic code, a zero percent rating shall be assigned when the requirements for a compensable rating are not met. 

Pertinently, at the April 2021 hearing, the Veteran testified that, in addition to loss of erectile power, this service-connected disability is manifested by deformity of the penis, diagnosed as Peyronie's disease. Particularly, the Veteran, a physician, described that Peyronie's disease is a disorder where the body of the penis exhibits an abnormal curvature when turgid. The Veteran competently and credibly testified that he is impacted by Peyronie's disease in such circumstances, and this has been the case since his prostate cancer diagnosis and treatment. 

Recently, the United States Court of Appeals for Veterans Claims (Court) issued a decision addressing the question of penile deformity with respect to erectile dysfunction rating claims. In Williams v. Wilkie, 30 Vet. App. 134 (2018), the Court noted that the definition of a "deformity" is a distortion or disfigurement of a part of the body. The Court further noted that, in cases such as this, such deformities could be either internal or external distortions of the penis, which would support assignment of a 20 percent disability rating under Diagnostic Code 7522.

In light of the Court's holding in Williams, the Veteran's first-hand description of this disorder, and his competent and credible medical opinion regarding the etiology of such, the Board concludes that the criteria for a 20 percent initial evaluation are met throughout the entirety of the appeal period. To that extent, the Veteran's appeal is granted. 

Finally, the Board finds that there is no basis for a higher or separate schedular initial evaluation under any other potentially available provision. As removal of the glans, complete atrophy or removal of the testis, or removal of half or more of the penis is not shown, a compensable rating under an alternative provision is not warranted. 38 C.F.R. § 4.115b, Diagnostic Codes 7521, 7523, 7524. Further, as noted above, special monthly compensation for loss of a creative organ has been awarded by the AOJ. The Veteran has made no assertions that an initial evaluation in excess of 20 percent for this service-connected disability is warranted on a schedular or extraschedular basis.

REASONS FOR REMAND

1. Entitlement to a compensable initial evaluation for service-connected residuals of lung cancer is remanded. 

2. Entitlement to a compensable initial evaluation for service-connected residuals of prostate cancer is remanded. 

Initially, the Board observes that the Veteran's VA treatment records allude to private treatment received by the Veteran at Johns Hopkins Hospital, where the Veteran has been employed and treated for these service-connected disabilities prior to and since each initial diagnosis. Despite the evidence showing that the Veteran received extensive medical treatment from this private facility, the only records from such were pathology reports dated in February 2000 and August 2011 confirming diagnosis of lung cancer and prostate cancer, respectively.

In view of above, the Board concludes that the AOJ failure to obtain these reasonably identifies records of private treatment prior to adjudication of the Veteran's initial claim represents a pre-decisional error in the duty to assist that must be corrected on remand. 

The Veteran was provided VA examinations in September 2019 to determine whether his residuals of prostate cancer and lung cancer were due to his in-service exposure to herbicide agents, and if so found, to assess the functional impairment of earning capacity stemming from the symptoms of such. 

At the April 2021 hearing the Veteran stated that, in his opinion as a physician, these examinations were inadequate for the purpose of identifying the residual symptoms of these disabilities and assessing the frequency, severity, and duration of the associated symptoms. Particularly, the Veteran testified that he experienced cancer residuals that were not reflected on the VA examination reports, to include diminished lung capacity and functioning, recurrent bladder infections, bladder cysts, and urethral bleeding due to multiple catheterizations. 

In view of the Veteran's competent and credible reports of experiencing cancer residuals not reflected on the September 2019 VA examination reports, the Board concludes that the examinations are inadequate for the purpose of readjudicating the Veteran's appealed issues. The AOJ's failure to ensure the adequacy of these examinations prior to assigning the initial evaluations for these service-connected disabilities represents a pre-decisional error in the duty to assist that must be corrected on remand.

The matters are REMANDED for the following actions:

1. The AOJ must request that the Veteran identify the names, addresses, and approximate dates of treatment for all of the non-VA health care providers who have treated him for his service-connected lung cancer and prostate cancer, to include all residuals of both diseases. 

*The Board is particularly interested in all private treatment records from Johns Hopkins Hospital. 

After securing appropriate release(s) from the Veteran, the AOJ should make two attempts to obtain any identified private treatment records which are not already associated with the file or make a formal finding that a second request for such records would be futile. 

The Veteran must be notified of the results of the record requests. If records are not received from any source, follow the notification procedures of 38 C.F.R. § 3.159(e). 

2. Thereafter, the AOJ must request that the Veteran be scheduled for appropriate VA examinations to evaluate his service-connected residuals of lung cancer and prostate cancer. The complete electronic record must be made available to, and reviewed by, the VA examiners prior to conducting the requested examination. All necessary studies and tests should be conducted. 

The examiners must identify all residuals of both disabilities, to include the frequency, severity, and duration of such and the resulting functional impairment of earning capacity. 

*In evaluating the Veteran's service-connected residuals of lung cancer, the examiner must complete pulmonary functions tests (PFTs) and comment on the difference in the Veteran's lung capacity prior since his lung lobe resection. 

* In evaluating the Veteran's service-connected residuals of prostate cancer, the examiner must utilize the DBQs pertaining to voiding dysfunction, renal dysfunction, urinary frequency, obstructive voiding, and urinary tract infections, as to fully and accurately reflect the Veteran's symptoms. 

*In completing the above, the VA examiners are on notice that the Veteran is a physician, and thus, his reports of experiencing symptoms, the symptoms' etiology, and resulting functional capacity of earning capacity must be afforded proper credence.

If the examiners cannot provide any opinion without resorting to mere speculation, this should be so stated along with supporting rationale. In so doing, the examiners shall explain whether the inability to provide a more definitive opinion is the result of a need for additional information, or that he or she has exhausted the limits of current medical knowledge in providing an answer to the particular question. 

3. Thereafter, the AOJ must readjudicate the Veteran's appealed issues in light of the totality of evidence of record. If any benefit sought is not granted to the fullest extent, the AOJ must provide the Veteran and his representative with a copy of the readjudication and afford them an appropriate period to respond.

 

 

Michael J. Skaltsounis

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board Scott W. Dale, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.