John G. CALDWELL, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–917.

United States Court of Veterans Appeals.

Submitted May 17, 1991.

Decided Sept. 17, 1991.

Andrew S. Penn, Upper Marlboro, Md., was on the brief for appellant.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Angela Foehl, Washington, D.C., were on the pleadings for appellee.

Before FARLEY, HOLDAWAY and STEINBERG, Associate Judges.

HOLDAWAY, Associate Judge:

Appellant, John G. Caldwell, appeals a decision of the Board of Veterans' Appeals (BVA or Board) issued on August 2, 1990. The BVA denied appellant's claim for service connection under 38 U.S.C. § 1112 (formerly § 312) for schizophrenia, paranoid type. That statute creates a presumption of service connection for certain chronic diseases if the disease is manifested to a degree of 10 percent or more within one year after separation from service. 38 U.S.C. § 1112(a)(1). The presumption is available for veterans who have served for ninety days or more during a period of war. 38 U.S.C. § 1112(a). Psychoses are considered chronic diseases under 38 U.S.C. § 1101(3) (formerly § 301(3)) and 38 C.F.R. § 3.309(a) (1990); paranoid schizophrenia is among the psychotic disorders for which compensation is provided. *See* 38 C.F.R. § 4.132, Diagnostic Code 9203 (1990).

Appellant disputes the findings of the Board, citing lay and medical evidence in the record concerning his atypical behavior after separation as proof that he was suffering from schizophrenia within the first year after service. The Board maintained, *inter alia,* that such behavior was not necessarily a product of psychosis. It found that appellant's schizophrenia was first demonstrated more than one year after separation, upon the first admission to a hospital for psychiatric care in November 1976. The BVA determined that appellant's mental illness was not related to military service, because the illness was shown at a date too remote from separation to be service connected.

We hold that the Board's finding, that appellant's schizophrenia was not present within one year after separation from service, is clearly erroneous and remand the case to the Board for appropriate proceedings to assign the proper rating for appellant's schizophrenia.

## I. BACKGROUND

Appellant served in the United States Navy from April 1973 to January 1975. During his last year he was assigned to Bethesda Naval Hospital as a medical corpsman. Appellant testified at a hearing before the BVA that it was at this time that he began to experience hallucinations and other difficulties which resulted in poor job performance. Appellant's job performance was noted in his Navy service medical records. There are, however, no service records indicating identified symptoms of mental illness or treatment for psychological problems during service.

After discharge from the Navy, appellant resided at his family home. The first record of hospitalization or medical treatment for a mental condition appears on November 4, 1976, nearly two years after separation from service, when appellant was committed to a private hospital by state court order. He was diagnosed as suffering from schizophrenia, paranoid type.

The medical records of the 1976 hospitalization indicate a history, as related by appellant and appellant's family, of atypical behavior on the part of appellant during the first year after discharge from the Navy. Appellant's mother stated that appellant had been uncharacteristically withdrawn "for about a year, ever since he got out of the Navy...." Both she and appellant's father had felt appellant needed psychological help "for some time" and had attempted to persuade appellant to seek it. This history was consistent in all of appellant's medical records, and was reiterated in sworn testimony by appellant's mother and by appellant's siblings at a hearing before the BVA on June 12, 1990. Since 1976, appellant has been treated six times at two different institutions, on both outpatient and resident bases. Appellant has consistently been diagnosed as suffering from schizophrenia, paranoid type.

Appellant has filed previous claims with the Veterans' Administration (now the Department of Veterans Affairs) (VA) for disability benefits. In August 1986, appellant was awarded service connection for "active psychosis" for the purpose of obtaining treatment at a VA facility under 38 U.S.C. § 1702 (formerly § 602). Under this provision, a veteran of World War II, the Korean War, or the Vietnam era, is entitled to treatment from the VA for active psychosis if the veteran develops the condition within two years after separation from service. *See also* 38 U.S.C. § 1710(a)(1)(A) (formerly § 610(a)(1)(A)). The "service connection" for treatment purposes is just that and does not entitle the veteran to "service connected" disability for compensation purposes.

On July 11, 1989, appellant submitted evidence to the VA regional office (RO) and requested a reopening of the case concerning disability compensation. Two rating decisions were issued in response to his request, one in September 1989 and the other in October 1989, which confirmed the June 30, 1989 rating decision for treatment purposes, and denied entitlement to service connection for disability compensation purposes based upon section 1112. Appellant appealed the determination of the VARO to the BVA. As part of the appeal to the BVA, a letter from a forensic psychiatrist, dated May 26, 1990, was submitted by appellant to the Board for consideration. The forensic psychiatrist had reviewed appellant's medical history in order to determine whether appellant had a mental disorder and whether that mental disorder was caused or aggravated by active service. It was the opinion of the psychiatrist that appellant suffered from schizophrenia, paranoid type, and that the disorder was probably first manifested in the Navy and was "definitely present within a year after his discharge."

A hearing was conducted before the BVA on June 12, 1990. The BVA rendered its decision on August 2, 1990, denying a grant of service connection.

## II. DISCUSSION

### A. Statutory and Regulatory Background

A presumption of service connection is created by 38 U.S.C. § 1112. Entitlement to compensation under 38 U.S.C. § 1110

(formerly § 310) is therefore available to a certain class of veterans as follows:

> [I]n the case of any veteran who served for ninety days or more during a period of war—
>
> > (1) a chronic disease becoming manifest to a degree of 10 percent or more within one year from the date of separation from such service ... shall be considered to have been incurred in or aggravated by such service, notwithstanding there is no record of evidence of such disease during the period of service.

38 U.S.C. § 1112(a)(1). The presumption created by section 1112 is rebuttable "where there is affirmative evidence to the contrary, or evidence to establish that an intercurrent injury or disease ... has been suffered...." 38 U.S.C. § 1113(a) (formerly § 313(a)). The Secretary has defined the standard for "affirmative evidence to the contrary" as follows:

> The expression 'affirmative evidence to the contrary' will not be taken to require a conclusive showing, but such showing as would, in sound medical reasoning and in the consideration of all evidence of record, support a conclusion that the disease was not incurred in service.

38 C.F.R. § 3.307(d) (1990).

The evidentiary basis to support a claim for service connection under section 1112 "may be established by medical evidence, competent lay evidence or both." 38 C.F.R. § 3.307(b) (1990). Evidence which may be considered in rebuttal "will be any evidence of a nature usually accepted as competent to indicate the time of existence or inception of disease, and medical judgment will be exercised in making determinations relative to the effect of intercurrent injury or disease." 38 C.F.R. § 3.307(d) (1990).

■ The statutory and regulatory framework thus contemplate a situation in which a veteran who develops a chronic disease within the presumptive period, but does not have a diagnosis of the illness in his service records, may be granted entitlement to service connection for compensation purposes.

The factual basis for such a claim does not require in-service medical evidence of the disease and may be established by competent lay evidence. 38 U.S.C. § 1112; 38 C.F.R. § 3.307(b).

The disease need not be diagnosed in the presumptive period. If it is not, however, there must "then [be] shown by acceptable medical or lay evidence characteristic manifestations of the disease to the required degree, followed without unreasonable time lapse by definite diagnosis." 38 C.F.R. § 3.307(c) (1990).

## B. Analysis

The Court is asked to review the factual findings of the BVA regarding whether appellant's illness was manifested within a year after separation from service. In reviewing a finding of fact, this Court is directed to "hold unlawful and set aside such finding if the finding is clearly erroneous." 38 U.S.C. § 7261(a)(4) (formerly § 4061(a)(4)); *Gilbert v. Derwinski*, 1 Vet. App. 49, 52 (1990); *see also Willis v. Derwinski*, 1 Vet.App. 66, 69 (1991). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *see also Gilbert*, at 52. This Court "is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert*, at 52–53; *Willis*, at 69.

■ Appellant's private medical records from November 1976 contain statements from appellant's mother concerning appellant's unusual behavior and her efforts to have him seek treatment during the year after discharge. Private medical records from 1976 until 1984 show this history was consistent with the statements of other family members and with statements made upon subsequent hospitalizations. This history was again confirmed by appellant's mother and siblings before the BVA. All of the hospital records confirm the diagno-

sis of paranoid schizophrenia. Appellant also submitted a letter from a private forensic psychiatrist who had reviewed appellant's medical records. It was the opinion of the psychiatrist that the behavior of appellant, as described by appellant and his family, presented the "classical symptoms of a schizophrenic disorder, described from a layman's viewpoint.... Also typical of a person with a psychotic illness is the lack of motivation to seek help." The psychiatrist also explained that cognitive deterioration, as displayed by appellant, "does not occur in a short span of time but typically requires progressive illness over years." The psychiatrist believed that "with reasonable medical certainty ... [appellant] has a mental disorder, i.e., Schizophrenia, paranoid type. This mental disorder probably was first manifested while [appellant] was in the Navy but was definitely present within a year after his discharge."

The BVA proffered nothing more than its own unsubstantiated speculations to counter the evidence in the record: "[F]indings of paranoid schizophrenia [were revealed] at a time too remote from the time of military service to be related thereto.... all atypical behavior is not necessarily indicative of a psychotic disorder.... an inability to perform certain job functions is not necessarily indicative of psychosis...." *John G. Caldwell,* BVA 90–26747, at 3 (Aug. 2, 1990). The BVA pointed to no evidence in the record which could support its decision or rebut the evidence supporting appellant's claim. Indeed, there is no such evidence. In reaching its conclusion that "the evidence in its entirety is not persuasive that an acquired psychiatric disability began during service or within one year thereafter," the BVA substituted its own medical judgment for the medical evidence of record, in this instance, the reports and diagnoses from the private hospitals and the opinion of the forensic psychiatrist.

This Court has previously held that the BVA cannot substitute its own unsubstantiated medical conclusions for that of the medical evidence of record. *Colvin v. Derwinski,* 1 Vet.App. 171, 174–75 (1991);

*Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990) (The BVA must provide reasons or bases for its medical conclusions). The conclusion of an examining psychiatrist is a medical conclusion which the BVA is not free to disregard. *Willis,* at 70.

Of course, the BVA is always free to secure advisory opinions, order a medical or psychiatric examination, or cite recognized medical treatises, to support its ultimate conclusions. *See Colvin,* at 174–75. We note that the BVA consulted with a staff medical adviser, *Caldwell,* BVA 90–26747, at 1, but the BVA decision itself cites no medical opinion, even from the staff adviser, to justify its decision. Moreover, if the BVA considers the opinion of a staff medical consultant, that opinion should be made part of the record. *See Colvin,* at 174–175. Such a procedure ensures that all medical evidence considered by the BVA will be made known to appellant and to this Court. *Id.* Such a procedure would afford the veteran the opportunity to explore a basis for reconsideration, and this Court, the opportunity to review the BVA decision 'on the record' as required by 38 U.S.C. § 7252(b) (formerly § 4052(b)). *See Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). Finally, if the BVA believed that the record was inadequate, it is required by VA regulations to have remanded the case to the regional office. *See Littke v. Derwinski,* 1 Vet.App. 90, 93 (1990).

### III. CONCLUSION

After a review of the record, we conclude there is no plausible basis for the BVA decision. Indeed, the evidence in the record is unanimous in supporting the conclusion that there were symptoms of a psychosis within one year after separation from service. "[B]ecause there is no evidence to support the BVA determination, it is obvious that a mistake has been committed, the finding is not plausible, there can be only one permissible view of the evidence, and, thus, the finding is clearly erroneous." *Karnas v. Derwinski,* 1 Vet.App. 308, 311 (1991). We, therefore, REVERSE the decision of the BVA of August 2, 1990.

The motion of the Secretary for summary affirmance is denied. The matter is remanded to the Board for a determination of the degree of appellant's disability in accordance with this opinion.