Citation Nr: 1456908 
Decision Date: 12/31/14 Archive Date: 01/09/15

DOCKET NO. 10-31 540 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to service connection for a left knee strain, claimed as a left leg injury.

2. Entitlement to service connection for sinusitis and rhinitis.

3. Entitlement to service connection for an acquired psychiatric disorder, to include depressive disorder with suicidal tendencies and adjustment disorder with anxious mood, rule out generalized anxiety disorder.

4. Entitlement to service connection for pseudofoliculitis barbea.

5. Entitlement to service connection for hemorrhoids.

6. Whether new and material evidence has been received to reopen a claim of entitlement to service connection for hepatitis C.

7. Entitlement to service connection for hepatitis C.


REPRESENTATION

Veteran represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

R. Kipper, Associate Counsel


INTRODUCTION

The Veteran served on active duty from September 1978 to June 1985.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a June 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas, which, in pertinent part, denied entitlement to service connection for left knee strain, sinusitis and rhinitis, a depressive disorder, pseudofoliculitis barbea, and hemorrhoids, and confirmed and continued a previous denial of service connection for hepatitis C. In September 2009, the Veteran submitted a timely Notice of Disagreement (NOD) with respect to the issues of entitlement to service connection for left knee strain, sinusitis and rhinitis, a depressive disorder, pseudofoliculitis barbea, and hemorrhoids. In a November 2009 statement, the Veteran also expressed disagreement with the RO's decision with respect to the issue of entitlement to service connection for hepatitis C. The Veteran timely perfected his appeal by filing a VA Form 9 dated in July 2010.

The Board acknowledges that the RO reopened the hepatitis C claim, and adjudicated it on the merits. Despite the determination reached by the RO, the Board must make its own determination as to whether new and material evidence has been received to reopen this claim. See Jackson v. Principi, 265 F.3d 1366, 1369 (Fed. Cir. 2001). The issues have been recharacterized accordingly.

In September 2014, the Veteran testified at a videoconference hearing before the undersigned Veterans Law Judge. A transcript of the hearing has been prepared and associated with the claims file.

The issue of entitlement to service connection for an acquired psychiatric disorder has been recharacterized as reflected on the cover page given the nature of the Veteran's claim and the medical evidence of record. See Clemons v. Shinseki, 23 Vet. App. 1 (2009) (the scope of a claim pursued by a claimant includes any diagnosis that may reasonably be encompassed by the claimant's description of the claim, reported symptoms, and the other information of record).

The Board notes that, subsequent to the RO's most recent adjudication of the Veteran's claims in the June 2013 Statement of the Case, additional evidence consisting of VA treatment records dated through January 2014 were associated with the record. However, as the Veteran's claim for service connection for hepatitis C is herein reopened, the Veteran is not prejudiced by the Board's consideration of such evidence in light of the favorable outcome. Moreover, as the reopened claim and the remaining claims are being remanded, the agency of original jurisdiction (AOJ) will have an opportunity to review such newly received records in the readjudication of his claims. 38 C.F.R. § 20.1304(c) (2014).

The Board also notes that, in addition to the paper claims file, there is a paperless, electronic record associated with the Veteran's claims (including Virtual VA and Veterans Benefits Management System (VBMS)). A review of the documents in such file reveals that certain documents are potentially relevant to the issues on appeal. Thus, any future consideration of this Veteran's case should take into consideration the existence of this electronic record.

The issues of entitlement to service connection for left knee strain, sinusitis and rhinitis, acquired psychiatric disorder, pseudofoliculitis barbea, hemorrhoids, and hepatitis C are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. In a July 2006 rating decision, the RO denied entitlement to service connection for hepatitis C. No timely appeal was received by VA, nor was any new and material evidence submitted within the applicable appeal period.

2. Additional evidence received since the RO's July 2006 decision is new to the record and relates to an unestablished fact necessary to substantiate the merits of the claim of entitlement to service connection for hepatitis C and raises a reasonable possibility of substantiating the claim of entitlement to service connection for hepatitis C.


CONCLUSIONS OF LAW

1. The July 2006 rating decision is final as to the claim of entitlement to service connection for hepatitis C. 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. §§ 3.156, 20.1103 (2014).

2. New and material evidence has been presented to reopen the claim of entitlement to service connection for hepatitis C. 38 U.S.C.A. §§ 5108 (West 2014); 38 C.F.R. § 3.156 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

As the Board's decision to reopen the Veteran's claim of entitlement to service connection for hepatitis C is completely favorable, no further action is required to comply with the Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations.

The Veteran's claim of entitlement to service connection for hepatitis C was previously denied, and the Veteran seeks to reopen this claim.

In general, RO rating decisions that are not timely appealed are final. See 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. § 20.1103 (2014). If a claim of entitlement to service connection has been previously denied and that decision became final, the claim can be reopened and reconsidered only if new and material evidence is presented with respect to that claim. 38 U.S.C.A. § 5108; Manio v. Derwinski, 1 Vet. App. 140, 145 (1991). New evidence means existing evidence not previously submitted to agency decision-makers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a) (2014). 

VA must review all of the evidence submitted since the last final rating decision in order to determine whether the claim may be reopened. See Hickson v. West, 12 Vet. App. 247, 251 (1999). The credibility of the evidence is presumed for the purpose of reopening. Justus v. Principi, 3 Vet. App. 510 (1992). The threshold for determining whether new and material evidence raises a reasonable possibility of substantiating a claim is "low." Shade v. Shinseki, 24 Vet. App. 110, 117 (2010). 

The Veteran suffers from hepatitis C, which he contends was incurred in service. His claim of entitlement to service connection for hepatitis C was initially denied in a March 2004 rating decision on the basis that the evidence showed no in-service diagnosis of hepatitis C or in-service exposure to any hepatitis C risk-factors. Thereafter, the Veteran sought to reopen his claim of entitlement to service connection for hepatitis C in March 2006. The RO issued the last final denial of the Veteran's claim of entitlement to service connection for hepatitis C in a July 2006 rating decision, which declined to reopen his claim on the basis that no new and material evidence had been submitted. The Veteran did not appeal that decision, nor did he submit any new and material evidence within a year of that rating decision. The September July 2006 rating decision therefore became final. See 38 U.S.C.A. § 7105(c) (West 2014); 38 C.F.R. § 20.1103.

Relevant evidence of record at the time of the RO's last final rating decision in July 2006 included the Veteran's service treatment records from February 1982 to June 1985 and VA treatment records showing a diagnosis of and treatment for hepatitis C. The RO concluded that no new and material evidence had been received showing an in-service diagnosis of hepatitis C or in-service exposure to hepatitis C risk factors. Thus, the claim was denied.

In December 2008, the Veteran requested that his claim for entitlement to service connection for hepatitis C be reopened. Relevant additional evidence received since the RO's July 2006 rating decision includes the Veteran's hearing testimony that he was first diagnosed with hepatitis C in 1985, the same year he was discharged from active service, as well as testimony regarding in-service exposure to blood while helping to treat an injured friend on the range. Additionally, the Veteran provided testimony regarding a lack of exposure to any other risk factors, with the exception of unprotected sex, since his discharge. 

This evidence was not previously on file at the time of the RO's July 2006 rating decision; thus, it is new. Furthermore, this evidence is material because it bears directly on the missing element of in-service incurrence or exposure to hepatitis C risk factors, which is the reason that the claim was previously denied. Specifically, the newly received evidence consists of the Veteran's lay statements suggesting his in-service exposure to a risk factor for hepatitis C, namely accidental exposure to blood, which he believes to be the origin of this condition, as well as lay statements indicating that he was first diagnosed with hepatitis C immediately after discharge. These statements are presumed credible for the purposes of evaluating the Veteran's request to reopen his claim of entitlement to service connection for hepatitis C. Justus, supra. 

Accordingly, and particularly in light of the "low threshold" standard endorsed by the Court in Shade v. Shinseki, 24 Vet. App. 110 (2010), the Board finds that new and material evidence has been submitted to reopen the claim of entitlement to service connection for hepatitis C.


ORDER

New and material evidence having been received; the claim of entitlement to service connection for hepatitis C is reopened.


REMAND

After a thorough review of the Veteran's claims file, the Board has determined that additional evidentiary development is necessary prior to the adjudication of the Veteran's claims of entitlement to service connection for left knee strain, sinusitis and rhinitis, an acquired psychiatric disorder, pseudofoliculitis barbea, hemorrhoids, and hepatitis C.

Outstanding VA and Service Treatment Records

With regard to each of the claims on appeal, a remand is required to obtain VA treatment records. The claims file contains VA treatment records dated from May 1999 to January 2014. However, at the September 2014 hearing, the Veteran indicated that he began receiving medical treatment at the Houston or San Antonio VA Medical Centers (VAMC) in 1985. Specifically, he testified that he was treated for depression in 1985, for hepatitis C in 1985, and for a left knee condition in 1986 or 1987. Additionally, the VA treatment records on file make reference to treatment as early as 1996. Upon remand, the RO should attempt to locate any outstanding VA treatment records from 1985 to the present from the Houston and San Antonio VAMCs. 38 C.F.R. § 3.159(c)(2) (2013); Bell v. Derwinski, 2 Vet. App. 611 (1992) (observing that any VA treatment records that have been generated up to and including the date of the Board's decision, whether or not filed in the appellant's claims folder, are in the constructive possession of the Board and must be considered).

Regarding each of the claims on appeal, remand is also required to obtain service treatment records. VA has a duty to assist the Veteran in developing his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). This duty includes making as many requests as are necessary to obtain relevant records from a Federal department or agency, including, but not limited to, military records. 38 C.F.R. § 3.159(c)(2). Here, the only service treatment records associated with the claims file are dated from February 1982 to June 1985; however, the Veteran entered active service in September 1978. The Board also notes that the records do not include an entrance examination. Additionally, the Veteran testified that he received in-service treatment for a left knee strain, pseudofoliculitis barbea, and depression while at Fort Carson and in Germany, which the Board notes was from 1979-1981. See Personnel Records. Thus, it appears to the Board that there may be pertinent service treatment records not associated with the claims file. It is unclear from the claims file what measures were taken by the RO to obtain these potentially missing service treatment records, to include informing the Veteran that records may be missing and that he should submit any records in his possession. On remand, an attempt should be made to obtain these potentially missing service treatment records. 

VA Examinations

VA's duty to assist includes providing a medical examination when it is necessary to make a decision on a claim. 38 U.S.C.A. § 5103A(d); 38 C.F.R. § 3.159. Such development is necessary if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim, but (1) contains competent evidence of diagnosed disability or symptoms of disability, (2) establishes that the Veteran suffered an event, injury or disease in service, or has a presumptive disease during the pertinent presumptive period, and (3) indicates that the claimed disability may be associated with the in-service event, injury, or disease, or with another service-connected disability. 38 C.F.R. § 3.159(c)(4); McLendon v. Nicholson, 20 Vet. App. 79, 83-86 (2006). The threshold for finding a link between current disability and service so as to require medical examination is low. Locklear v. Nicholson, 20 Vet. App. 410 (2006); McLendon, 20 Vet. App. at 83.

Regarding the Veteran's sinusitis, remand is required to provide the Veteran with a VA examination. VA treatment records show a diagnosis of acute sinusitis in December 2002, and the Veteran was treated for drainage from the nose in January 2012 and September 2013. Additionally, the Veteran's service treatment records note that he was treated for "running" sinuses in January 1985, and he testified that he often had sinus problems in service due to being out in the field. Furthermore, the Veteran competently and credibly testified that he has had sinus problems since service discharge. See Hearing Transcript. Thus, there is evidence of a current disability, an in-service event, and an indication that the disability may be associated with service. However, the Board finds that there is insufficient evidence of record to decide the claim. Accordingly, remand is required for an examination in order to assess the precise nature and etiology of his asserted sinus condition.

With regard to the Veteran's claimed acquired psychiatric disorder, VA treatment records show a current diagnosis of depressive disorder and adjustment disorder with anxious mood, rule out generalized anxiety disorder. Further, the Veteran testified at his September 2014 hearing that he suffered from such symptoms while still on active service and that he has continued to suffer from such symptoms since his separation. The Veteran is competent to report when symptoms of the psychiatric disability began and that they have continued since active service. Heuer v. Brown, 7 Vet. App. 379 (1995); Falzone v. Brown, 8 Vet. App. 398 (1995); Caldwell v. Derwinski, 1 Vet. App. 466 (1991). He also testified that he was first diagnosed with depression in 1985, immediately after separation from service. Therefore, in light of the Veteran's report that he has continued to experience depression since separation from active service, and his current diagnosis of depression, the Board finds that the Veteran should be provided a VA examination to determine the nature and etiology of any acquired psychiatric disorders. McLendon v. Nicholson, 20 Vet. App. 79 (2006).

Regarding the Veteran's hemorrhoids, a remand is required to provide the Veteran with a VA examination. The Veteran testified that he first had hemorrhoids during active service as a result of eating C-rations. While his available service treatment records are negative for reports of or treatment for hemorrhoids in service, the Veteran testified that he self-treated with over-the-counter medications. The Board notes that the Veteran is competent to report symptoms of hemorrhoids, as they are capable of lay observation. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). Additionally, post-service VA treatment records show treatment for "moderate size internal hemorrhoids." See October 2010 Treatment Note. Further, the Veteran has competently and credibly testified that he has had hemorrhoids since service discharge. See Hearing Transcript. As such, because there is an indication that hemorrhoids were possibly present during his active duty, coupled with medical evidence indicating the presence of hemorrhoids in 2010, a VA examination with a medical opinion should be obtained. 

The Board also finds that the McLendon requirements are satisfied with respect to the hepatitis C claim, and, therefore, it is necessary to remand this claim for a VA examination. With respect to the first McLendon element, evidence of a current 
disability, the Veteran's VA medical records note that he has chronic hepatitis C. With respect to the second McLendon element, the incurrence of the Veteran's hepatitis C in service, the Veteran testified at his June 2011 Board hearing that he was exposed to blood in-service while treating a friend with an injury. The low threshold of the third McLendon element is satisfied by the fact that accidental exposure to blood by health care workers, to include combat medic or corpsman, is a medically recognized risk factor for hepatitis C. The Board finds, however, that there is insufficient evidence of record to decide the claim. Therefore, the Board finds it necessary to remand this claim for a VA examination and etiology opinion.

Additionally, the Veteran raised the theory of hepatitis C as secondary to his service-connected sciatica for the first time in an April 2014 claim. Specifically, the Veteran asserted that his hepatitis C is aggravated by the medications that he takes for sciatica. VA has a duty to address all arguments put forth by a claimant and/or theories under which entitlement to benefits sought may be awarded. See generally Schroeder v. West, 212 F.3d 1265 (Fed. Cir. 2000); Buckley v. West, 12 Vet. App. 76, 83 (1998). There may be multiple theories or means of establishing entitlement to a benefit for a disability, and if the theories all pertain to the same benefit for the same disability, they constitute the same claim. Roebuck v. Nicholson, 20 Vet. App. 307, 313 (2006). Accordingly, VA "must investigate the reasonably apparent and potential causes of [a claimant's] condition and theories of service connection that are reasonably raised by the record or raised by a sympathetic reading of the claimant's filings." DeLisio v. Shinseki, 25 Vet. App. 45, 53-54 (2011). 

In this regard, under section 3.310(a) of VA regulations, service connection may be established on a secondary basis for a disability which is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Where a service-connected disability aggravates a nonservice-connected condition, a veteran may be compensated for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). The Board acknowledges that the RO adjudicated entitlement to service connection for hepatitis C on a direct basis. However, the Veteran has not yet been notified as to how to substantiate a claim for secondary service connection, including by aggravation. Therefore, on remand, the Veteran must be provided with such notice. Additionally, a medical opinion regarding aggravation should be obtained.

Finally, regarding the claims for entitlement to service connection for left knee strain and pseudofoliculitis barbea, the Board finds that the evidence, at this juncture, does not necessitate the provision of VA examinations. However, as potentially pertinent VA and service treatment records may be added to the record, additional evidence may yet be provided which meets the McLendon threshold.

Accordingly, the case is REMANDED for the following action:

1) Obtain and associate with the Veteran's claims file all outstanding VA treatment records from 1985 to the present, documenting treatment for left knee strain, sinusitis and rhinitis, an acquired psychiatric disorder, pseudofoliculitis barbea, hemorrhoids, and hepatitis C, including treatment records from both the Houston and San Antonio VAMCs. If any of the records requested remain unavailable, clearly document the claims file to that effect and notify the Veteran of any inability to obtain these records, in accordance with 38 C.F.R. § 3.159(e) (2014). The Veteran should also be afforded the opportunity to submit any outstanding private treatment records and to identify any other pertinent VA treatment records.

2) Take all appropriate actions to attempt to obtain missing service treatment records, especially from the period from 1978-1982, including the missing service entrance examination. 

If all procedurally appropriate actions have been taken to locate and secure the Veteran's outstanding service treatment records, and it is reasonably certain that such records do not exist or that further efforts to obtain those records would be futile, the RO must make a formal finding to that effect. The RO must also provide the Veteran and his representative with proper notice that meets the requirement under 38 U.S.C.A. § 5103A(b)(2) and 38 C.F.R. § 3.159(e) and including (a) the identity of the specific records that cannot be obtained, (b) an explanation as to the efforts that were made to obtain those records, (c) a description of any further action to be taken by VA with respect to the claim, and (d) that the Veteran is ultimately responsible for providing the evidence. The Veteran and his representative must then be given an opportunity to respond.

3) Provide the Veteran with appropriate notice, pursuant to the VCAA under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b), that includes the requirements for establishing secondary service connection pursuant to 38 C.F.R. § 3.310, for his claim for service connection for hepatitis C.

4) After completing all development set forth in paragraphs 1-3 above, the Veteran should be scheduled for a VA examination regarding the claimed sinusitis disability. The examiner must be provided the Veteran's claims file for review, and any indicated studies must be completed. Following examination of the Veteran and review of the claims file, the examiner should provide an opinion as to whether it is at least as likely as not (i.e., 50 percent or greater probability) that the Veteran has a sinus disability that had its onset in service or is etiologically related to his active service.

A rationale for all requested opinions shall be provided. If the examiner cannot provide an opinion without resorting to mere speculation, he or she shall provide a complete explanation stating why this is so.

The examiner is advised that the Veteran is competent to report in-service events and treatment, and his symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions. If the examiner rejects the Veteran's reports, the examiner must provide a reason for doing so.


5) After completing all development set forth in paragraphs 1-3 above, afford the Veteran an appropriate VA examination to determine the nature, onset and likely etiology of any acquired psychiatric disorders. 

Any and all indicated evaluations, studies, and tests deemed necessary by the examiner should be accomplished. 

All current acquired psychiatric disorders should be diagnosed. 

For each psychiatric disorder diagnosed, the examiner should opine as to whether it is at least as likely as not (i.e. 50 percent or greater probability) that the Veteran's acquired psychiatric disorder is causally or etiologically related to service, or had an onset within one year after discharge. A rationale for all requested opinions shall be provided. If the examiner cannot provide an opinion without resorting to mere speculation, he or she shall provide a complete explanation stating why this is so.

The examiner is advised that the Veteran is competent to report in-service events and treatment, and his symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions. If the examiner rejects the Veteran's reports, the examiner must provide a reason for doing so.

6) After completing all development set forth in paragraphs 1-3 above, afford the Veteran an appropriate VA examination to determine the nature, onset and likely etiology of hemorrhoids. The claims folder should be made available and reviewed by the examiner. All indicated studies should be performed. 

The examiner is to state whether the Veteran has a diagnosis of hemorrhoids, and if so whether it is at least as likely as not (i.e. 50 percent or greater probability) that they had their onset in service or are otherwise related to service, including due to constipation caused by eating C-rations. A rationale for all requested opinions shall be provided. If the examiner cannot provide an opinion without resorting to mere speculation, he or she shall provide a complete explanation stating why this is so.

The examiner is advised that the Veteran is competent to report in-service events and treatment, and his symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions. If the examiner rejects the Veteran's reports, the examiner must provide a reason for doing so.

7) After completing all development set forth in paragraphs 1-3 above, afford the Veteran an appropriate VA examination to determine the nature, onset and likely etiology of hepatitis C. The claims folder should be made available and reviewed by the examiner. All indicated studies should be performed. 

Based on this review, the examiner is asked to address each of the following questions: 

(a) Is it at least as likely as not (i.e. 50 percent or greater probability) that the Veteran's hepatitis C had its onset directly during service or is otherwise causally related to any event or circumstance of the Veteran's active service?

A history of all the Veteran's potential risk factors for hepatitis C infection should be detailed in full. The examiner must list and discuss all documented and reported pre-service, in-service, and post-service risk factors. The examiner should specifically address the Veteran's theory that the hepatitis C resulted from exposure to blood while in service.

(b) Notwithstanding the answer to questions (a), is it at least as likely as not (i.e. 50 percent or greater probability) that hepatitis C has been aggravated (made permanently worse or increased in severity) by any other medical condition, such as medications that he takes for sciatica? If yes, was that increase in severity due to the natural progress of the disease?

A rationale for all requested opinions shall be provided. If the examiner cannot provide an opinion without resorting to mere speculation, he or she shall provide a complete explanation stating why this is so.

The examiner is advised that the Veteran is competent to report in-service events and treatment, and his symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions. If the examiner rejects the Veteran's reports, the examiner must provide a reason for doing so.

8) After completing the above, conduct any additional development deemed necessary, to potentially include VA examinations regarding the Veteran's claimed left knee strain and pseudofoliculitis barbea. Thereafter, readjudicate the Veteran's claims in light of all evidence of record, including all additional evidence received. If the benefits sought on appeal are not granted, the Veteran and his representative should be furnished with a supplemental statement of the case and afforded an opportunity to respond before the file is returned to the Board for further appellate consideration.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
DEBORAH W. SINGLETON
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs