http://www.va.gov/vetapp16/Files6/1644967.txt

Citation Nr: 1644967 
Decision Date: 11/30/16 Archive Date: 12/09/16

DOCKET NO. 13-13 800 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Fort Harrison, Montana

THE ISSUES

1. Entitlement to service connection for posttraumatic stress disorder (PTSD).

2. Entitlement to service connection for an acquired psychiatric condition other than PTSD.

3. Entitlement to service connection for a back disability.

REPRESENTATION

Veteran represented by: Brian Epstein, Attorney at Law

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

James A. DeFrank, Counsel

INTRODUCTION

The Veteran has active service from July 1979 to September 1980 in the United States Marine Corps.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2012 rating decision issued by the Department of Veterans' Affairs (VA) Regional Office (RO) in Fort Harrison, Montana, which denied entitlement to service connection for a back condition. The decision also considered the Veteran's previously denied claims for PTSD and an acquired psychiatric condition other than PTSD re-opened, but then confirmed and continued the denial.

In December 2014, the Veteran testified before the undersigned Veterans Law Judge (VLJ) in a videoconference hearing. A transcript of that hearing is of record.

In May 2015 the Board remanded these issues for additional development.

The issues of entitlement of service connection for entitlement to PTSD and entitlement to service connection for an acquired psychiatric condition other than PTSD are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDING OF FACT

A current low back disability was not manifest in service, was not manifest within one year of separation and is not related to service.

CONCLUSION OF LAW

A low back disability was not incurred in or aggravated by service, and may not be presumed to have been incurred therein. 38 U.S.C.A. §§ 1110, 1112, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

VA's duties to notify and assist claimants in substantiating a claim for VA benefits are found at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 and 38 C.F.R. 
§§ 3.102, 3.156(a), 3.159, 3.326(a). 

The RO provided notice to the Veteran in an August 2012 letter. 

VA has also fulfilled its duty to assist in obtaining the identified and available evidence needed to substantiate the claims adjudicated in this decision. The RO has either obtained, or made sufficient efforts to obtain, records corresponding to all treatment for the claimed disorder described by the Veteran. 

Per the May 2015 Board remand instructions, the Veteran was provided a VA examination in May 2015. The report of this examination reflects that the examiner reviewed the Veteran's past medical history, recorded his current complaints, conducted appropriate evaluations of the Veteran, and rendered appropriate diagnoses and opinions consistent with the remainder of the evidence of record. Thus, the Board finds that the May 2015 VA examination report is adequate for purposes of rendering a decision in the instant appeal. See 38 C.F.R. § 4.2 (2015); see also Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Neither the Veteran nor his representative has contended otherwise. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met. 38 C.F.R. § 3.159(c) (4) (2015); Barr, 21 Vet. App. at 312.

In light of the above, the Board also finds that the RO substantially complied with the May 2015 remand directives, to the extent possible, and no further action in this regard is warranted. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998) where Board's remand instructions were substantially complied with).

Also of record and considered in connection with the appeal are the various written statements provided by the Veteran and by the Veteran's representative on his behalf as well as the Veteran's hearing testimony. The Board finds that no additional RO action to further develop the record on the claims is warranted.

Overall, there is no evidence of any VA error in notifying or assisting the Veteran that reasonably affects the fairness of this adjudication. 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b).

The Board has reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000). 

Laws and Regulations

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a).

To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service." Davidson v. Shinseki, 581 F.3d 1313, 1315-16 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Certain diseases, such as arthritis, may be presumed to have been incurred in service when manifest to a compensable degree within one year of discharge from active duty. 38 U.S.C.A. § 1112 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2015). 

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden for certain chronic disabilities such as arthritis is through a demonstration of continuity of symptomatology. 

In relevant part, 38 U.S.C.A. § 1154(a) requires that the VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim to disability or death benefits. Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed.Cir.2007). In fact, competent medical evidence is not necessarily required when the determinative issue involves either medical etiology or a medical diagnosis. Id. at 1376-77; see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Layno, supra (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted"). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b).

Factual Background and Analysis

The Veteran testified that he began experiencing back pain in service which continued to the present day. Specifically, the Veteran testified that in April 1980, at 29 Palms during a training exercise, he fired a weapon with the muzzle plug still engaged, causing the round to detonate at closer range than was intended, blowing him off of his feet and backwards, and crushing him under the weapon. He reported that he injured his back rolling down a hill to get away from the gun.

The Veteran's service treatment records are negative for treatments or complaints of a back disability. While a February 1980 service treatment record noted that the Veteran fell on his knee at a gun park, there are no complaints related to his back from this incident. Notably, the Veteran's August 1980 Medical Board Report which resulted in the Veteran's discharge from active duty as a result of his asthma disability, was absent for back complaints or diagnoses.

A July 2002 VA treatment report noted that the Veteran indicated that he had some occasional low back pain from lifting 100 pound refrigerators as part of his job.

An October 2013 VA treatment record noted that a review of an MRI from 2012 demonstrated degenerative disc disease of the lumbar spine.

Per the May 2015 Board remand instructions, the Veteran underwent a VA examination in May 2015. The examiner noted that the Veteran reported that he injured his back during a training exercise when he fired his weapon with the muzzle plug in place which caused the round to detonate at closer range than was intended. He indicated that this blew him off into a pit and that he injured his back rolling down a hill trying to get away from his weapon. The Veteran denied a pre-service injury but reported a motor vehicle accident where he was rear ended in July 2010 when he was driving and stopped at a red light. The examiner noted that a review of the record and the Veteran's reported history found that service treatment records are silent for any back concerns or evaluations. There was no documentation of the Veteran's gun incident or evaluation for an injury to his mid or low back. He was discharged for a pre-service asthma disability. The examiner noted that there was documentation regarding low back problems in 2002 (22 years after service) after the Veteran lifted a 100 pound air conditioner on his job. In January 2012 he was seen for complaints for severe low back pain after he was knocked off of a train car and also for his motor vehicle accident when he was rear ended. The Veteran also reported heavy lifting and pushing due to his work in refrigeration. The examiner opined that it was less likely than not that the Veteran's current back disability was causally related to his active service. The examiner noted that the Veteran was 53 years old at the time of his diagnosis of degenerative disc disease and that his type of work and other injuries must be noted. It must also be acknowledged that there is a lack of objective evidence in the service treatment records regarding any back injury, treatment or condition. Although current documentation supports low back changes, there were no objective findings to support service connection.

When considering the pertinent evidence of record in light of the above-noted legal authority, the Board finds that service connection for a low back disability is not warranted.

As there is a current diagnosis of degenerative disc disease of the lumbar spine, the first element of service connection is satisfied. However, a veteran seeking disability benefits must establish not only the existence of a disability, but also an etiological connection between his military service and the disability. Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000); D'Amico v. West, 209 F.3d 1322, 1326 (Fed. Cir. 2000); Hibbard v. West, 13 Vet. App. 546, 548 (2000).

As noted above, service connection may be granted on a presumptive basis for certain chronic diseases, including arthritis, if such disease is shown to be manifest to a degree of 10 percent or more within one year following the Veteran's separation from active military service. See 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. In this instance however, service connection for degenerative disc disease of the lumbar spine on a presumptive basis is not warranted as the record does not show evidence of degenerative disc disease of the lumbar spine within one year of the Veteran's separation from active duty. Although the Veteran dated the onset of his disability to 1980, the first medical evidence of a back disability is the July 2002 VA treatment record which noted low back pain. Additionally, the first evidence of a diagnosis of degenerative disc disease of the lumbar spine is in 2012. Accordingly, service connection for a low back disability on a presumptive basis is not warranted as a chronic disease did not manifest to a degree of 10 percent or more within one year following the Veteran's separation from active military service.

To the extent that the Veteran is asserting that he experienced back pain and continuing symptoms thereafter, the Board acknowledges that a layperson is competent to testify in regard to the onset and continuity of symptomatology. Heuer v. Brown, 7 Vet. App. 379, 384 (1995); Falzone v. Brown, 8 Vet. App. 398, 403 (1995); Caldwell v. Derwinski, 1 Vet. App. 466 (1991). Furthermore, lay witnesses may, in some circumstances, opine on questions of diagnosis and etiology. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009) (finding that the Board's categorical statement that "a valid medical opinion" was required to establish nexus, and that a layperson was "not competent" to provide testimony as to nexus because she was a layperson, conflicts with Jandreau). 

However, the Board finds it significant that while the Veteran reported in 2002 that he had low back pain from moving 100 pound refrigerators, the Veteran made no complaints relating his back pain to a prior in-service injury. Additionally, the May 2015 VA examiner also specifically addressed the Veteran's claims of continuity of symptomatology and noted that it was 22 years after the Veteran's service when the first documented complaints of low back pain appear in 2002.

As the Veteran was not diagnosed with a low back disability until many years after service, no complaints or findings were noted during the course of his medical separation, and there was a significant period between his service injuries and his post-service complaints where the medical record was silent for complaints of a low back disability, the Board concludes that the weight of the evidence is against a finding of any continuity of symptomatology. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000); Shaw v. Principi, 3 Vet. App. 365 (1992). 

Regarding service connection on a direct basis, the Board again notes that the Veteran's service treatment records are negative for complaints or treatments of a low back disability. Significantly, the only medical opinion addressing the etiology of the claimed low back disability weighs against the claim as the May 2015 VA examiner opined that it was less likely than not that the Veteran's current back disability was causally related to his active service

None of the competent medical evidence currently of record refutes this conclusion, and the Veteran has not presented or identified any such existing medical evidence or opinion. 

Consequently, entitlement to service connection for a low back disability is not warranted on a direct basis.

The Board notes the Veteran and his representative's contentions regarding the etiology of his claimed low back disability. To the extent that the Veteran and his representative themselves contend that a medical relationship exists between his claimed current low back disability and his service, the Board again acknowledges that the Veteran is competent to testify as to his observations. Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Furthermore, lay witnesses may, in some circumstances, opine on questions of diagnosis and etiology. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009) (finding that the Board's categorical statement that "a valid medical opinion" was required to establish nexus, and that a layperson was "not competent" to provide testimony as to nexus because she was a layperson, conflicts with Jandreau). In the instant case, however, the Board finds that degenerative disc disease of the lumbar spine is not a disability subject to lay diagnosis as this diagnosis requires medical training. More significantly, the Veteran and his representative do not have the medical expertise to provide an opinion regarding the claimed low back disability etiology. Specifically, where the determinative issue is one of medical causation, only those with specialized medical knowledge, training, or experience are competent to provide evidence on the issue. See Jones v. West, 12 Vet. App. 460, 465 (1999). Additionally, the May 2015 VA examiner provided detailed rationales in support of her opinions and cited to the relevant evidence. For this reason, the VA examiner's opinions are the most probative evidence of record. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000) (noting that a factor for assessing the probative value of a medical opinion includes the thoroughness and detail of the opinion). 

Thus, the Veteran and his representative's assertions that there is a relationship between his claimed low back disability and his service are not sufficient in this instance and are outweighed by other probative evidence of record. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 

In sum, for the reasons and bases expressed above the Board finds that the preponderance of the evidence is against the Veteran's claims of entitlement to service connection. The benefit-of-the-doubt rule does not apply, and the claims must be denied. 38 U.S.C.A. § 5107(b). 

ORDER

Entitlement to service connection for a back disability is denied.

REMAND

The Board finds that more development is necessary prior to final adjudication of the claims remaining on appeal.

As noted above, in May 2015, the Board remanded the Veteran's claims for entitlement to service connection for PTSD and entitlement to service connection for an acquired psychiatric condition other than PTSD for additional development. Specifically, the Board instructed the AOJ to provide the Veteran with a VA psychiatric examination to determine the etiology of any current psychiatric disorder. The examiner was to specifically determine whether the Veteran had a current diagnosis of PTSD under DSM-IV and whether the Veteran had a preexisting acquired psychiatric disability that was aggravated by his active service.

Per the May 2015 Board instructions, the Veteran underwent a VA examination in May 2015. The VA examiner concluded that the Veteran's symptoms did not meet the criteria for a PTSD diagnosis under DSM, Fifth Edition (DSM-5). In addition, the examiner opined that the Veteran had a diagnosis of unspecified depressive disorder which was less likely than not related to the Veteran's reported military related events as there was no solid evidence to link the unspecified depressive disorder to any in-service history.

In a March 2016 VA addendum opinion, the VA examiner again concluded that the Veteran's symptoms did not meet the criteria for a PTSD diagnosis under DSM-5.

However, the examiner's finding that the Veteran does not meet the criteria for PTSD under DSM-5 is insufficient in this case because the Veteran's appeal was certified to the Board in January 2014, well before the August 4, 2014 effective date for replacement of the DSM-IV with the DSM-5 in the Schedule for Rating Disabilities. See 80 Fed. Reg. 53, 14308 (March 19, 2015). The rule specifically states that the update to DSM-IV does not affect claims certified to the Board prior to August 2014, even if such claims are subsequently remanded. Id. 

Therefore, the file should be forwarded to the VA examiner who conducted the May 2015 VA examination, if available, to obtain an addendum medical opinion to determine the Veteran's diagnosis under DSM-IV.

Additionally, while the May 2015 VA examiner opined that the Veteran had a diagnosis of unspecified depressive disorder which was less likely than not related to the Veteran's reported military related events, he did not specifically determine whether the Veteran had an acquired psychiatric disability that preexisted his military service.

As a result, the May 2015 examination report does not comply with the Board's May 2015 instructions. The United States Court of Appeals for Veterans Claims has held that a remand confers on the veteran, as a matter of law, the right to compliance with the remand orders. Stegall v. West, 11 Vet. App. 268, 271 (1998). 

Accordingly, the Board finds that the May 2015 VA examiner should also amend his examination report in accordance with the Board's May 2015 directives cited herein to determine whether there was clear and unmistakable (obvious or manifest) evidence demonstrating that the Veteran suffered from an acquired psychiatric disorder, to include PTSD, before entering service and if so, if there is clear and unmistakable evidence that the Veteran's preexisting psychiatric disability was not aggravated by his active service.

Accordingly, the case is REMANDED for the following action:

1. Return the claims file to the examiner that examined the Veteran for his claimed acquired psychiatric disorder to include PTSD disability in May 2015. If that examiner is not available, return the file to another examiner with the appropriate knowledge and expertise. If the new examiner feels that an examination is necessary, such examination should be scheduled. 

The examiner should determine whether the Veteran has symptomatology that satisfies the required criteria under DSM-IV for a diagnosis of PTSD. 

If PTSD under DSM-IV is diagnosed, the examiner shall indicate whether such is due to the Veteran's fear of hostile military or terrorist activity during service. The examiner should also identify the specific events that are considered stressors supporting the diagnosis, and fully explain why the stressors are considered sufficient under DSM-IV. 

The examiner should also determine:

a) If there clear and unmistakable (obvious or manifest) evidence demonstrating that the Veteran suffered from an acquired psychiatric disorder, to include PTSD, before entering service? 

(b) If so, is there clear and unmistakable evidence that the Veteran's preexisting psychiatric disability was not aggravated by his active service?

All indicated tests and studies are to be performed. Prior to the examination, the claims folder must be made available to the examiner for review of the case. A complete rationale for any opinion expressed should be provided.

2. Ensure that the examination report complies with this remand and answers the questions presented herein. If any report is insufficient, it should be returned to the examiner for necessary corrective action, as appropriate. 
See Stegall v. West, 11 Vet. App. 268 (1998).

3. After completion of the above and any additional development deemed necessary, the issues on appeal should be reviewed with consideration of all applicable laws and regulations. If the benefits sought remain denied, the Veteran and his representative should be furnished a supplemental statement of the case and be afforded the opportunity to respond. Thereafter, the case should be returned to the Board for appellate review, if in order.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs